(No. 44113.—

BERNARD CAREY, Appellant, v. RICHARD J. ELROD *et al.,* Appellees.

*Opinion filed September 30, 1971.—Rehearing denied Nov. 24, 1971.*

CALVIN SAWYIER, and JAMES V. DeMARCO, both of Chicago, for appellant.

MATTHEW J. BEEMSTERBOER, and BRUNSWICK, BEEMSTERBOER, JEMILO & RICHARDSON, all of Blue Island, for appellee Richard J. Elrod.

EDWARD V. HANRAHAN, State's Attorney, and HOWARD M. MILLER, both of Chicago, (VINCENT BENTIVENGA, Jr., and PAUL P. BIEBEL, Jr., Assistant State's Attorneys, of counsel ) for other appellees.

MR. JUSTICE DAVIS delivered the opinion of the court:

The plaintiff, Bernard Carey, defeated candidate for the office of sheriff of Cook County, brought this action as an elector, and not as a defeated candidate, under the provisions of section 23—5 *et seq.* of the Election Code (Ill.Rev.Stat. 1969, ch. 46, par. 23—5 *et seq.*), to contest the election of Richard J. Elrod to that office. The circuit court of Cook County, as a condition of hearing the election contest, ordered the plaintiff to pay to it the sum of $220,642.80, to cover the costs of the contest and recount, which sum was to be disbursed upon further order of the court. Upon the plaintiff's failure to deposit this sum, his petition was dismissed and this appeal followed.

The official canvass indicated that the plaintiff was defeated for the office of sheriff of Cook County by a margin of 10,479 votes out of a total of 1,763,577 votes cast. Prior to the filing of this action, the plaintiff, as a candidate, filed for "discovery recount" under the provisions of section 22—9.1 of the Election Code (Ill.Rev. Stat. 1969, ch. 46, par. 22—9.1). This particular provision permits a defeated candidate, who has received at least 95% of the votes cast for the successful candidate, to file a petition, for discovery purposes only, asking that the ballots be examined and counted in those precincts or districts in which paper ballots were used. The right of discovery is limited, however, to 25% of the total of the precincts or districts involved, and the candidate must pay, with the filing of his petition, the sum of $5 per election district or precinct specified. The plaintiff deposited the $3,245 required for the "discovery recount" of 649 precincts.

As a result of errors revealed in the "discovery recount," and a consequent net gain in the voting for him, the plaintiff, as an elector, filed this action. He alleged that irregularities had occurred in all of the voting precincts which necessitated a recount in all of the precincts in the city of Chicago and the county of Cook.

The defendant, Elrod, filed a motion asking that the plaintiff be required to deposit with the court a sum of money sufficient to cover the costs and expenses of a full recount in all of the precincts. At the direction of the court, the Cook County clerk and the Board of Election Commissioners of the city of Chicago, submitted an itemized statement to the court of the estimated costs of the recount, totalling the sum of $220,642.80, which the plaintiff was ordered to deposit.

The plaintiff contends that there was no statutory provision requiring him to make or permitting the court to order such a deposit upon threat of dismissal of his suit if he failed to do so. The plaintiff also urges that the requirement that he make such a deposit would, in any event, be unconstitutional and deny to him due process and equal protection of the law as required by the fourteenth amendment to the Federal constitution, and by section 2 of article II of the Illinois constitution (1870), and would also violate sections 18 and 19 of article II, and section 22 of article IV thereof.

In this litigation, the parties address themselves particularly to section 23—23 of the Election Code (Ill.Rev.Stat. 1969, ch. 46, par. 23—23), and the question of whether this section permits costs, of the nature for which the plaintiff was required to make the deposit, to be assessed.

Prior to its amendment in 1969, section 23—23 of the Election Code provided:

"The case shall be tried in like manner as other civil cases, *** and shall have preference in the order of hearing to all other cases. The court may make and enforce all necessary orders for the preservation and production of

the ballots, poll books, tally papers, returns, registers and other papers or evidence that may bear upon the contest.

"Whenever a petition for a recount has been filed as provided in this Article, any opposing candidate or any elector \*\*\* may file a petition within 10 days after the completion of the canvass of the precincts specified in the petition for a further recount of the votes cast in any or all of the balance of the precincts in the county, municipality or other political subdivision, as the case may be.

*"In event the court, in any such case shall be of the opinion that such action will expedite hearing and determination of the contest, the court may appoint a Board of Election Commissioners or a Canvassing Board, as the case may be, and refer the case to it to recount the ballots, to take testimony and other evidence, to examine the election returns, to make a record of all objections to be heard by the court that may be made to the election returns or to any of them or to any ballots cast or counted, and to take all necessary steps and do all necessary things to determine the true and correct result of said election and to make report thereof to the court. Such Board of Election Commissioners or Canvassing Board, as the case may be, shall have authority to count the ballots or cause the same to be counted under its supervision and direction, to conduct such hearing or hearings as may be necessary and proper, to apply to the court in the manner provided by law for the issuance of subpoenas or for any other appropriate order or orders to compel the attendance of witnesses, and to take such necessary steps and perform such duties and acts in connection with the conduct of any such hearing or hearings in like manner and to the same extent as in hearings conducted by masters in chancery in chancery actions. Such Board of Election Commissioners or Canvassing Board, as the case may be, may, with the approval of the court, employ such assistants as may be necessary and proper to provide for counting the ballots, examining the election returns and for taking all necessary steps and doing all necessary things*

*to determine the true and correct result of said election under the direction and supervision of the Board of Election Commissioners or the Canvassing Board, as the case may be. Such Board of Election Commissioners or the Canvassing Board, as the case may be, shall receive such compensation for its services and such allowances for the services of its assistants and for reimbursement of expenses incurred by it as shall be approved by the court, and all such compensation and allowances when approved by the court shall be taxed and allowed as costs in such cause. The court may from time to time, upon the court's own motion or upon the application of the Board of Election Commissioners or the Canvassing Board, as the case may be, or of any party to said cause, require the parties to said cause or any of them to deposit such amounts of money with the court or give such other security for costs as the court may deem reasonable and proper, and the court may award such costs as between the parties to said cause in like manner as costs may be awarded by the court in chancery actions.*

"Any petitioner may amend his petition at any time before the completion of the recount by withdrawing his request for a recount of certain precincts, or by requesting a recount of additional specified precincts. The petitioner shall deposit or shall cause to be deposited, such amounts of money as the court may require as security for costs for such additional precincts as the court may deem reasonable and proper." (Italics ours.) Ill.Rev.Stat. 1967, ch. 46, par. 23—23.

In 1969, this section was amended and the entire paragraph in italics was deleted. The rest of the section was retained intact.

The defendants contend that the deletion of this entire paragraph by the legislature was the result of oversight and error, and that the legislature did not intend to remove the provisions relative to the power of the court to tax and apportion the expenses as costs. They contend

that the statute must still be read as though these provisions were retained. The plaintiff urges that the legislature intended to remove from the courts the power to appoint boards to assist in conducting recounts, and the power to tax and apportion compensation for services and for reimbursement of expenses incurred by such boards, as costs between the parties, as the court deemed proper. We agree with the defendants' contention.

In 1962, the voters of this State approved an amendment to article VI of our State constitution, which became effective January 1, 1964. This amendment—the new Judicial Article—abolished the offices of fee officers and masters in chancery as a part of our judicial structure. Numerous other changes in the Judicial Article left many of our State statutes inconsistent with the new constitutional amendment.

In February of 1969, the Director of the Administrative Office of the Illinois Courts submitted 40 bills to the members of the Judicial Advisory Council, which were intended to eliminate these inconsistencies. The Director noted in his letter that these bills were necessary to amend the statutes to conform to the new Judicial Article and that "these bills made no substantive changes in the law and are suggested solely for the purpose stated above."

One of the bills submitted amended section 23—23 of the Election Code in the manner we have indicated. Upon the assurance that this was merely a housekeeping bill, which made no changes in substantive law, it was passed without being sent to the committee and was approved on September 15, 1969.

Notwithstanding the assurance to the contrary, the bill in question did make substantive changes in the law. The most obvious was the deletion from the section of the provision which authorized the court to tax, and in its discretion apportion, as costs, compensation for services and reimbursement for expenses incurred by the election boards in connection with the recount. Without statutory

authority, the expenses of conducting a recount may not be taxed as costs and may not be apportioned among the parties, and the burden of this expense would then fall solely upon the taxpayers.

By its nature, an election contest is unlike the typical litigation which is submitted to the courts. Because of its unique characteristics, it is given by statute "preference in the order of hearing to all other cases." The mechanics of conducting a recount, as a part of the contest procedure, particularly where many precincts are involved, are such that the court cannot hear the case in the normal manner and expeditiously dispose of the issues. The statute appropriately provided both the means to hear and determine an election contest in an expeditious manner, and the authority to tax the attendant unusual expenses which accompany such a procedure as costs in the case, if the court deemed this proper.

We cannot find any intent on the part of the legislature to abolish these procedural provisions which are so necessary and important in the conduct of an election contest. Rather, we agree that under the circumstances in which the bill amending section 23–23 was submitted, the intent of the legislature was only to eliminate the reference to masters in chancery—a housekeeping procedure to cause the section to conform to the new Judicial Article.

Under these circumstances, we interpret the statute to still include the paragraph specifically deleted by the legislature, except for the reference to masters in chancery. We have authority to read into statutes language omitted by oversight. *People v. Hudson, 46 Ill.2d 177, 181; People ex rel. Cason v. Ring, 41 Ill.2d 305, 310-316 incl.*

In *Ring* we likewise were concerned with an amendment to the Election Code. There the legislature in 1967 amended the section of the Election Code which gave to the voters the right to make application to have unqualified names on the precinct register erased. This right had existed under the pertinent statute since 1943. The

amendment purported to give this right only in connection with the 1970 and subsequent elections. The question before us was whether the legislature really intended to deprive the voters of this right for the 1968 election. We held that the legislature did not contemplate such result, that the language discontinuing the erasure procedure for the 1968 election was an oversight resulting from successive amendments to the bill, and we made a number of observations regarding statutory interpretation that are equally apropos here.

We noted that the traditional rules of statutory construction are employed for the purpose of determining legislative intent, and that those rules which lead to a result contrary to the legislative intent otherwise evidenced, must yield to that intent. In *Ring* at page 310, we stated: " 'Such an intent of the legislature may be indicated by a consideration of the amendatory act in its entirety, or by a consideration of the amendatory act and the unamended sections of the original act or code as a whole, or by contemporaneous legislation on the same subject *or by other circumstances surrounding the enactment of the amendment.'* (Emphasis added.) Sutherland, Statutory Construction, sec. 1932 (3rd ed. 1943); [citations.]

"The primary purpose of statutory construction is ascertainment of the legislative purpose and intent. To that end, consideration of the history and course of the legislation is always proper. [Citations.] Also apropos is consideration of the occasion and necessity for the law, the previous condition of the law on the subject, and the defects, if any, in the former law which were intended to be remedied. [Citations.] Furthermore, 'It is a universally adopted rule of statutory construction that the intention of the legislature is to be gathered *not only from the language used* but also from the reasons for the enactment and the purposes to be thereby attained.' (Italics supplied.) In re Estate of Curtis, 28 Ill.2d 172, 179 \*\*\*."

In *Ring,* on pages 313—315, we cited a number of our

prior decisions which recognized that if the intention of the legislature can be determined with certainty, words of a statute may be added, deleted or changed if necessary to achieve this intent, and at page 314, in a quote from *Smith v. County of Logan, 284 Ill. 163,* we stated: " 'The object of construing a statute is to ascertain and give effect to the intention of the legislature. The intention of the law-makers is the law. It is to be gathered from the necessity or reason of the enactment and the meaning of the words, enlarged or restricted according to their real intent. In seeking this intention the court will always have regard to existing circumstances, contemporaneous conditions, the object sought to be attained by the statute and the necessity or want of necessity for its adoption. It must also have in mind the language used by the legislature, the evil to be remedied and the object to be attained. In construing a statute the court will not be confined to its literal meaning.' "

The legislative intent in question is further evidenced by the fact that the legislature, when made aware of the language of the amendment it had made to section 23–23, restored the pertinent deleted language of the section by House Bill No. 1578. This bill unanimously passed the House on May 21, 1971, and unanimously passed the Senate on June 8, 1971. On the question of the prior intent of the legislature, it is appropriate for us to consider this recent legislative action. *People v. Hudson, 46 Ill.2d 177, 182.*

On August 27, 1971, the Governor vetoed House Bill 1578. His veto message, among other things, noted the 1969 legislative deletion from section 23–23 of the Election Code, which authorized the court to tax, and in its discretion apportion, as costs, compensation for services and reimbursement for expenses incurred by election boards in connection with a recount. He suggested that the members of the State Board of Elections and of the

Election Laws Commission re-examine the election laws, and particularly the area thereof pertaining to election contests.

The message made no mention of the circumstances underlying the inadvertent deletions from this section. However, for the reasons stated, we conclude that the 1969 legislature intended only to delete from section 23—23 the references to masters in chancery, and to retain the remainder of the deleted paragraph.

We agree with the plaintiff that the citizens of this country are entitled to a free and undiluted vote in public elections. At the same time, we recognize that legislatures may impose reasonable limitations and conditions upon the access to courts in connection with all justiciable issues, including actions brought by a person to test whether he has received a free and undiluted vote.

Recently, the Supreme Court, in *Boddie v. Connecticut, 401 U.S. 371, 28 L.Ed.2d 113, 91 S.Ct. 780,* held that a Connecticut statute requiring the payment of court fees and costs for service of process, in the total sum of $60, as a condition precedent to access to the courts, was unconstitutional when applied to indigent female welfare recipients, who, concededly, wanted divorces and were unable to pay such fees, and, thus, were denied access to the courts for this purpose. The court observed that a statute may be "constitutionally invalid as applied when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question." 401 U.S. 371, 379, 28 L.Ed.2d 113, 120, 91 S.Ct. 780.

The invalidity of the fees and costs in the sum of $60 as applied to indigent female welfare recipients, who wanted divorces and were unable to pay such fees, is a far cry from the circumstance of an elector who desires a recount in an election contest where the necessary services of the election attendants and custodians of the election

paraphernalia, and other proper expenses to be incurred in connection with the determination of the true and correct result of the election will be $220,642.80. The costs of the election contest must be borne by someone. This poses the question of whether this burden should be thrust upon the taxpayers or upon the parties who voluntarily seek such recount. These costs are neither penalties nor fees, as in *Boddie,* but rather, are the normal costs of conducting the recount.

In *Boddie,* the court noted that the courts of Connecticut were the sole means whereby the plaintiffs could obtain a divorce, and that denying them access to the courts deprives them of the means to adjust a fundamental human relationship. The court went on to say that the right to a meaningful opportunity to be heard before a court within the limits of practicality, must be protected against a denial of the application of particular laws to particular individuals. Under the circumstances of this case, we believe that the plaintiff, as an elector, has transcended the limits of practicality with reference to his constitutional right to be heard without advancing such security for the costs to be incurred in connection with the recount, as to the court may seem proper.

Inherent in *Boddie* is the recognition of practical limitations and conditions upon the right to be heard. We have recently recognized the constitutional right to impose fees and costs as a condition precedent to judicial relief in a number of situations. In *Ali v. Danaher, 47 Ill.2d 231,* we held a requirement that a litigant pay a $1 library fee as a part of a filing fee in a civil case to be constitutional. In holding that the library fee was not an unconstitutional "purchase of justice" requirement, we referred to a recent case, among others, wherein we held a statute to be constitutional which provided for the imposition, in the course of litigation, of a $50 jury fee, and which permitted the court clerk to retain such fee to help defray the general expenses of the jury system even though the jury was not used. *Fried v. Danaher, 46 Ill.2d 469.*

The costs imposed in this case are directly related to the exceptional and unusual expenses that were projected to be incurred. The physical processes involved in an election contest and recount require the assistance of attendants and custodians of certain election materials and paraphernalia. These costs were substantial, and by his action, the plaintiff sought to impose this financial burden upon the taxpayers. In unusual cases, even the more customary fees and expenses of litigation may be substantial. The cost of a bond in connection with the issuance of a temporary injunction, or the cost of a bond where supersedeas is sought, may effectively bar one from bringing a particular injunction action or from effectively prosecuting an appeal. The cost of preparing a massive record or extensive briefs in connection with an appeal may, in an appropriate case, likewise deny the right to appeal.

Because of the unusual nature and expense that must result to someone—the parties or the taxpayers—from an election contest and recount involving approximately 5,500 precincts, we believe the statute in question properly gives to the court the discretion to approve the expenses thereof, and to tax them as costs.

By an appendix to his brief, the plaintiff indicates, and we acknowledge, that it is common throughout the States for the respective legislatures to enact statutes which provide for the payment of expenses of an election contest. However, such circumstance does not assist us in the determination of this litigation. The question presented to us by the plaintiff relates solely to the power of the legislature to enact the statute which we have construed, its constitutionality, and the propriety of the order of the trial court in the context of this case. We cannot pass upon the wisdom of the particular enactment and the plaintiff has not urged that the court abused its discretion.

We neither find the statute unconstitutional, nor that the actions taken by the trial court pursuant thereto resulted in an unconstitutional application of it. We hold

that the court had the power to require the deposit of the plaintiff.

The order of the trial court dismissing the petition is affirmed.

*Judgment affirmed.*