EUGENE KOSTELNAK, Plaintiff-Appellant, *v.* RETIREMENT BOARD OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO, Defendant-Appellee.

First District (2nd Division)   No. 79-65

Opinion filed May 13, 1980.

John P. De Rose, of Oak Brook, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Robert R. Retke and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Eugene Kostelnak, brought this action to review the decision of the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (the Board) denying him the supplemental annuity established in section 5—167.2 of the Illinois Pension Code. (Ill. Rev. Stat. 1975, ch. 108½, par. 5—167.2.) The circuit court of Cook County affirmed the administrative decision, and this appeal was taken. Plaintiff claims the Board's denial of benefits was inconsistent with legislative intent and a misapplication of the terms of the statute. Further, plaintiff contends that where there is a printing error in the statute and the Board awards annuities to groups unanticipated by the legislature, arbitrary and capricious disbursement practices result, denying him equal protection of the law.

On May 23, 1967, at the age of 43, plaintiff withdrew from the Chicago Police Department after serving the 20 years requisite for a pension. He was eligible to begin receiving the minimum annuity on November 11, 1973, his 50th birthday. An annuity of $183.83 per month was awarded by the Board under section 5—132(c) which reads:

"If he is less than age 50 on withdrawal, he may, upon attainment of age 50 or over, become entitled to the annuity provided in this Section or, he may, upon application before age 50, receive a refund of the deductions from salary, plus interest at 1½% per annum if he is entitled to refund under Section 5—163." Ill. Rev. Stat. 1975, ch. 108½, par. 5—132(c).

On July 15, 1977, plaintiff petitioned the Board for a supplemental annuity pursuant to section 5—167.2 of the Illinois Pension Code (Ill. Rev. Stat. 1975, ch. 108½, par. 5—167.2), which states in pertinent part:

"Beginning with the monthly annuity payment due in January 1, 1972, the fixed and granted monthly annuity payment for any policeman who retired from the service, before September 1, 1976, at age 50 or over with 20 or more years of service and entitled to an annuity on July 1, 1973, shall be not less than: (1) $225 to January 1, 1973; (2) $250 from January 1, 1973 to July 1, 1975 and $350 thereafter."

Following a hearing, the Board found plaintiff did not meet all requirements for eligibility, and thus was ineligible for the additional

increment. Plaintiff then petitioned for administrative review in the circuit court, and when the decision of the Board was affirmed, took this appeal.

I.

Plaintiff first raises a constitutional claim of denial of equal protection. He argues that a numerical error, the reversal of the numbers 6 and 7 in the qualifying date ("before September 1, 1976"), occurred after the General Assembly's passage of the bill but prior to the Governor's signature and caused the Board to pay benefits to persons not intended to be covered in House Bill 919 (House Bill 919 of the 79th General Assembly, approved August 28, 1975, Pub. Act 79-631). The equal protection aspect of the Board's application of the allegedly erroneous statute is disputed by the parties; however, if indeed an incorrect date was included in section 5—167.2 set out above, and House Bill 919 and the enactment presented to and signed by the Governor were not identical formulations, then the threshold question is under which date, 1967 or 1976, plaintiff's rights must be construed.

■■ Both parties agree that the date "1976" in the phrase "before September 1, 1976" which appears in both the session laws and in the bill as signed by the Governor is not the date (1967) contained in House Bill 919, as passed by the General Assembly. The stipulation or agreement of the parties is not sufficient to substantiate claims that there was an irregularity in the enactment procedures. (See *Freitag v. Union Stock Yard & Transit Co.* (1914), 262 Ill. 551, 556, 104 N.E. 901.) Upon examination of the enrolled bill signed by the Governor, it is apparent that it states 1976, while House Bill 919 as voted on and passed by the General Assembly states 1967.[1] It is pertinent to note that House Bill 919 did not purport to amend the questioned date in section 5—167.2. This conclusion is buttressed by a historical review of the evolution of the section.

Section 5—167.2, which provides for a supplemental annuity, similar to a cost of living increase, was originally adopted in 1969 by the 76th General Assembly (House Bill 1720, approved October 6, 1969, Pub. Act 76-1727). At that time the pertinent language read "before September 1, 1967." Then in 1971 the legislature amended section 5—167.2 but did not change the pertinent language. (House Bill 818, approved September 23, 1971, Pub. Act 77-1621). This section, next amended by the 78th General Assembly in 1973 (House Bill 1871 approved September 12, 1973, Pub. Act 78-833), established the pertinent paragraph now under consideration but with the identical language of its predecessors, "before September 1,

---

[1] In response to a request during oral argument, counsel provided the court with copies certified by the Secretary of State of House Bill 919 (as passed by the legislature), House Bill 919 (as signed by the Governor), and House Bill 1871 (predecessor of 919).

1967." House Bill 919 in the form as passed by the legislature read "before September 1, 1967." It is obvious to us that an error in typing, the 1967 changed to 1976, occurred in preparing the legislation to be signed by the Speaker of the House, President of the Senate, and to be approved by the Governor.

Our supreme court in *Carey v. Elrod* (1971), 49 Ill. 2d 464, 275 N.E.2d 367, *appeal dismissed* (1972), 408 U.S. 901, 33 L. Ed. 2d 327, 92 S. Ct. 2488, when confronted with a mechanical error, looked to the intent of the legislature, in the course of the legislation, to read into the statute language omitted by oversight. In *Carey*, the legislature deleted certain procedural provisions from the Election Code. The supreme court stated it could find no intent on the part of the legislature to abolish these procedural provisions, and that the change was an oversight resulting from successive amendments to the bill. Further, the court held the intent was to eliminate reference to masters in chancery to cause the section to conform to the then new judicial article. Therefore, the supreme court interpreted the statute to still include the paragraph specifically deleted by the legislature. It should also be noted that in *Carey* the legislature, when made aware of its amendments, took action to restore the language. In the instant case the legislature has taken no action to change the date, and so far as we know, it is not aware of the problem of House Bill 919.

In the instant case, the prior enactment (as represented by House Bill 1871) was substantially parallel to House Bill 919 as passed by the legislature. The date in both bills reads 1967. Indeed a comparison of the two pieces of legislation demonstrates a legislative intent to retain the same pension qualifying factors but to increase the annual annuity for the annuitant. We cannot locate any indication of a legislative intent to change the date from 1967 to 1976.

■■ Therefore, following the reasoning in *Carey*, we interpret section 5—167.2 to read "1967" instead of "1976." (See Ill. Rev. Stat. 1975, ch. 108½, par. 5—167.2; see also *People ex rel. Cason v. Ring* (1968), 41 Ill. 2d 305, 242 N.E.2d 267; *cf. Community Consolidated School District No. 210 v. Mini* (1973), 55 Ill. 2d 382, 386, 304 N.E.2d 75, *appeal dismissed* (1974), 416 U.S. 923, 40 L. Ed. 2d 279, 94 S. Ct. 1921.) Section 5—167.2 should read:

> "Beginning with the monthly annuity payment due in January 1, 1972, the fixed and granted monthly annuity payment for any policeman who retired from the service, before September 1, [*1967*], at age 50 or over with 20 or more years of service and entitled to an annuity on July 1, 1973, shall be not less than: (1) $225 to January 1, 1973; (2) $250 from January 1, 1973 to July 1, 1975 and $350 thereafter." (Emphasis added.)

## II.

■■ The remaining question is whether under the statute as we interpret it, the Board properly excluded plaintiff from benefits. Plaintiff contends that the provision actually allows those who merely withdrew from service prior to September 1, 1967, and later reached age 50 to recover. We find no such ambiguity, or intent, in the qualifying factor. Plaintiff withdrew from the service at age 43. He did not become eligible for a pension until he reached the age of 50 on November 11, 1973. He is not eligible for the benefits of section 5—167.2 because he did not meet the requirements of the section. To be eligible he should have retired before September 1, 1967 (which he did); he should have been age 50 (which he was not); and he should have had 20 or more years of service (which he did). He likewise was not eligible for an annuity on July 1, 1973. Even if the disputed language is 1976, the result would be the same for the same reasons applicable to 1967.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN, J., concurs.

Mr. JUSTICE STAMOS, specially concurring:

I would also affirm the order of the trial court. In my estimation, however, the rationale adopted by the majority fails to consider very real problems arising from the requirements for passage and enactment of legislation in the Illinois Constitution. Further, I question the propriety of judicially altering a legislative enactment, thus circumventing the legislative-executive processes. As I view the case, the primary issue simplifies to what effect a material change between the bill passed by the General Assembly and that presented to and signed by the Governor has upon the validity of a statute. If such an alteration affects the constitutional requirements for passage of the statute, rights cannot be construed under it since "no right can be predicated upon an unconstitutional law. * * * It confers no rights; it imposes no duties; it affords no protection; it creates no office. It is, in legal contemplation, as inoperative as though it had never been passed." (*Chicago, Wilmington & Vermilion Coal Co. v. People* (1905), 214 Ill. 421, 454, 73 N.E. 770.) I recognize that if the differing dates were the type of error which does not materially alter the substance of the bill, the validity of the law would not be impaired. (*Illinois Central R.R. Co. v. People* (1892), 143 Ill. 434, 446, 33 N.E. 173; see also *Plummer v. People* (1874), 74 Ill. 361.) Nevertheless, a mistake which substantially alters the standards under which an annuity

can be paid must be considered a material change. Accordingly, the pertinent inquiry is the legal effect of the Governor's signing of a bill different in form than that passed by the legislature. It is well established that the question of validity of a law is a judicial one and that "[n]o bill can become a law except in the mode prescribed by the constitution, and the power and duty to decide whether a bill has become a law reside in the courts." (*Neiberger v. McCullough* (1912), 253 Ill. 312, 323, 97 N.E. 660.) The Illinois Constitution mandates that after passage of a bill, it shall be presented to the Governor for his approval. If he signs it, it shall then become law. Ill. Const. 1970, art. IV, §9(a).

In *People ex rel. Dezettel v. Lueders* (1918), 283 Ill. 287, 119 N.E. 339, our supreme court addressed a markedly similar situation to that with which we are confronted here and held that where a law passed by the assembly with 14 amendments was presented to and acted upon by the Governor without the amendments, the resulting "law" was invalid and void. (See also *County of Cook v. Healy* (1906), 222 Ill. 310, 78 N.E. 623.) It was as if there were two different bills, each with the same number but different content, and one had been acted upon by the legislative branch and the other by the executive. As *Dezettel* indicates, the requirement that the Governor sign the bill passed by the legislature mandates that the bill be in the same material form as when voted on by the assembly. (See Cohn, *The Process of Legislation*, 1963 U. Ill. L. F. 27, 46.) Therefore, in the instant case, the original enactment of the legislature remained a bill and never became a law since constitutional requirements for passage had not been fulfilled.

This constitutional mandate of conformity flows logically from the landmark case of *Spangler v. Jacoby* (1853), 14 Ill. 297, 299, which held that "[a] majority of all the members elected to either branch of the general assembly, must concur in the passage of a bill. This is indispensable to its becoming a law. Without it, the act has no more force than the paper upon which it is written." It is manifest that if the bill signed by the Governor was materially changed from the one passed by the General Assembly, it cannot be said to have been enacted by that body. Neither can it be presumed that the bill would have been passed in the altered form or signed by the Governor in its original state. See *People ex rel. Reitz v. DeWolf* (1871), 62 Ill. 253.

Nevertheless, the majority has altered section 167.2, changing the date contained therein to conform with that in the legislative enactment. Authority for such a material alteration is predicated on our supreme court's decision in *Carey v. Elrod* (1971), 49 Ill. 2d 464, 275 N.E.2d 367; yet, I find that decision distinguishable. The supreme court in *Carey* considered legislative history and present legislative action in concluding that the language was mistakenly omitted. Unlike *Carey*, we have no

legislative comments or Illinois Administrative Office letters to specifically set out the reasoning behind the provisions of the enactment. Additionally, in *Carey*, the enactment was amended solely as a housekeeping procedure to delete references to masters in chancery in accord with the new constitutional provisions abolishing such officers; various sources were presented to the court to explicitly detail this procedure. Further, upon being made aware of the discrepancy, the legislature immediately passed a new bill, thus restoring the deleted language. In the instant case, the record indicates that legislators were made aware of the erroneous dates; even so, unlike *Carey*, no amendatory legislation has resulted. Finally, the issue presented in *Carey* did not concern as in the case at bar a conflict between the bill as passed by the legislature and as signed by the Governor, but rather pertained to language omitted from both formulations.

I would also distinguish the case at bar from the situation presented in *Meister v. Carbaugh* (1923), 310 Ill. 486, 142 N.E. 189, where the court allowed an improperly enacted law to stand where the irregularity was in the time of printing of the bill (whether before or after the assembly vote), a requirement designed to prevent surprise in the final form of the bill. That the delayed printing engendered no surprise was demonstrated by several facts: the law "has been acted upon since that time, has been amended by the General Assembly at a succeeding session, and has for a number of years constituted a part of the State's legislative policy." (310 Ill. 486, 488.) Further, in *Meister*, the law had been in operation for 12 years without objection. In the instant case, plaintiff filed for benefits under the act less than two years after its enactment. The legislature has not had occasion to amend or reconsider the act and thus, unlike *Meister*, no possibility of ratification arises. Most importantly, in *Meister* the error was one of legislative enactment processes rather than accuracy of the final law. Those factors which allowed the *Meister* court to validate the challenged statute are not present here.

For the above reasons, I would rely on the *Dezettel* and *Healy* cases, discussed previously, rather than *Carey*, to find that that portion of section 167.2 tainted by the enrolled error is invalid and void. As in *Dezettel*, it must be supplanted by the previously existing valid enactment—Ill. Rev. Stat. 1973, ch. 108½, par. 5—167.2. See 283 Ill. 287, 292.

How far the taint spreads to infect the whole statute was delineated in *Baim v. Fleck* (1950), 406 Ill. 193, 92 N.E.2d 770. "The general rule is that only the invalid parts of a statute are without legal effect. It is only where they are so blended with, and a part of, the other provisions that the legislature would not have passed the remainder, that the whole will be declared void." (406 Ill. 193, 201; see *Sperling v. County Officers*

*Electoral Board* (1974), 57 Ill. 2d 81, 86, 309 N.E.2d 589; *McDougall v. Lueder* (1945), 389 Ill. 141, 154-55, 58 N.E.2d 899.) Similarly in *Myers v. Krajefska* (1956), 8 Ill. 2d 322, 134 N.E.2d 277, an examination of the severability of the provisions was utilized to determine whether the remaining portions were "capable of being executed wholly independently of that which is rejected." 8 Ill. 2d 322, 328; see also *Harris-Intertype Corp. v. Donley Bindery Co.* (1975), 26 Ill. App. 3d 140, 145, 324 N.E.2d 668.

Section 5—167.2 is organized in three parts. The initial portion, encompassing the first two paragraphs, sets out supplemental annuities for retired policemen after attainment of age 65. The second section, also comprised of two paragraphs, lists the supplemental annuity qualifying factors which benefit younger retired policemen not covered by the prior paragraphs. The final third of 5—167.2 provides funding for the increased annuities. Since the 1967/1976 error is one of the essential elements of qualifying for the supplemental annuity, under the second section covering younger workers, each of which must be satisfied for compliance, that one date cannot be deleted without altering the required standards. Thus, I would strike the paragraph which reads:

> "Beginning with the monthly annuity payment due in January 1, 1972, the fixed and granted monthly annuity payment for any policeman who retired from the service, before September 1, 1976, at age 50 or over with 20 or more years of service and entitled to an annuity on July 1, 1973, shall be not less than: (1) $225 to January 1, 1973; (2) $250 from January 1, 1973 to July 1, 1975 and $350 thereafter."

Those paragraphs which are not inclusive of the erroneous date are not integrally related to the paragraph set out above or impossible of independent execution, and indeed may stand alone without the offending section. See *Vissering Mercantile Co. v. Annunzio* (1953), 1 Ill. 2d 108, 123-24, 115 N.E.2d 306, *appeal dismissed* (1954), 347 U.S. 949, 98 L. Ed. 1096, 74 S. Ct. 680; *People ex rel. County of Du Page v. Smith* (1961), 21 Ill. 2d 572, 586-87, 173 N.E.2d 485.

I would concur with the majority conclusion that plaintiff was properly excluded from benefits under the statute. But, as the foregoing indicates, I am of the opinion that the provision that the Board used to determine plaintiff's status is invalid and should not be altered as the majority has done. However, plaintiff's rights may properly be construed under the 1973 statute, which was in existence at the time of the attempted 1975 enactment. Section 5—167.2 of the 1973 Act provides in relevant part:

> "Beginning with the monthly annuity payment due in January 1, 1972, the fixed and granted monthly annuity payment for any

policeman who retired from the service, before September 1, 1967, at age 50 or over with 20 or more years of service and entitled to an annuity on July 1, 1973, shall be not less than: (1) $225 to January 1, 1973; (2) $250 from January 1, 1973 and thereafter." Ill. Rev. Stat. 1973, ch. 108½, par. 5—167.2.

The qualifying factors in the 1973 statute are identical to those contained in the 1975 enactment after alteration by the majority opinion. I agree with the majority that under the requirements of section 167.2, plaintiff is excluded from benefits.

For the aforementioned reasons, I would affirm the judgment of the trial court.