(No. 73460.—

FRED COLLINS *et al.*, Indiv. and as Members of a Group of Individuals Similarly Situated, Appellees, v. THE BOARD OF TRUSTEES OF THE FIREMEN'S ANNUITY & BENEFIT FUND OF CHICAGO, Appellant.

*Opinion filed March 18, 1993.*

104

Jerold S. Solovy, Laura A. Kaster and James L. Thompson, of Jenner & Block, of Chicago (Steven J. Teplinsky, Maynard B. Russell and Floyd Babbitt, of Fagel & Haber, of Chicago, of counsel), for appellant.

Terrance A. Hilliard, of Chicago (Steven M. Levin, of Levin & Perconti, of Chicago, of counsel), for appellees.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon and Mardell Nereim, of counsel), for *amicus curiae* City of Chicago.

Rosalyn B. Kaplan, Solicitor General, of Chicago, for *amicus curiae* Roland W. Burris, Attorney General of the State of Illinois.

JUSTICE NICKELS delivered the opinion of the court:

Plaintiffs, Fred Collins and Michael Spencer, brought a complaint individually and on behalf of a similarly situated class of plaintiffs composed of fire paramedics for the City of Chicago (the fire paramedics). They sought a declaration, in the circuit court of Cook County, that section 6—210.1 of article 6 of the Illinois Pension Code (40 ILCS 5/6—210.1 (West 1992)) (the Code), which pertains to the "Firemen's Annuity and Benefit Fund—Cities

over 500,000'' (Firemen's Fund), unconstitutionally diminished fire paramedics' vested pension rights in violation of section 5 of article XIII of the Illinois Constitution (Ill. Const. 1970, art. XIII, §5). Defendant, the board of trustees of the Firemen's Annuity and Benefit Fund of Chicago (the Board), filed a motion to dismiss, arguing as a matter of law that section 6—210.1 was not unconstitutional.

The circuit court granted the Board's motion, and the fire paramedics appealed. The appellate court reversed relying solely on this court's decision in *Herhold v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1987), 118 Ill. 2d 436. (226 Ill. App. 3d 316.) In *Herhold*, the court held that, for purposes of computation of disability benefits, a fire paramedic was entitled to service credits for pre-1983 periods during which he had performed the duties of his position, but for which he had neither been a member of nor made contributions to the Firemen's Fund. (*Herhold*, 118 Ill. 2d at 439.) The Board petitioned to appeal as a matter of right or alternately for leave to appeal. This court granted leave to appeal (134 Ill. 2d R. 315(a)).

Section 6—210.1, which was enacted in 1989, conditions the fire paramedics' retirement annuity service credits for pre-1983 service on payment of contributions to the Firemen's Fund for such period. To reach the question of the constitutionality of section 6—210.1, this court must first consider section 6—209 (40 ILCS 5/6—209 (West 1992)) and section 6—106 (40 ILCS 5/6—106 (West 1992)) of article 6 of the Code. As part of the total revision of prior pension legislation in 1963, section 6—209 established the method of computation of service credits for both ordinary disability and retirement annuities since its enactment. Section 6—106 was enacted in 1983 and amended the definition of fireman contained there to include fire paramedic.

## BACKGROUND

Prior to 1977, fire paramedics did not participate in any retirement annuity system. In 1977, however, fire paramedics began participating in the Municipal Employees', Officers', and Officials' Annuity and Benefit Fund (Municipal Fund) created by article 5 of the Code (40 ILCS 5/8—101 *et seq.* (West 1992)). Under the statutory provisions creating the Municipal Fund, a fire paramedic could retire at age 55 after 20 years of service with a minimum retirement annuity of 38% of his average salary at retirement. (40 ILCS 5/8—138 (West 1992).) In contrast, article 6 of the Code, creating the Firemen's Fund, provided for retirement at age 50 after 20 years of service with a minimum retirement annuity of 50% of the pensioner's average salary at retirement. 40 ILCS 5/6—125, 6—128 (West 1992).

Fire paramedics continued to participate in the Municipal Fund until 1983, at which time the legislature amended the definition of fireman found in section 6—106 to include fire paramedic. Specifically, section 6—106 was amended to define "fireman" as "[a]ny person who: (a) was, is, or shall be employed by a city in its fire service as a \*\*\*, fire paramedic \*\*\*." (40 ILCS 5/6—106 (West 1992).) In all other respects, section 6—106 remains otherwise unchanged since its enactment in 1963.

In anticipation of the amendment of section 6—106, which was enacted and took effect September 24, 1983, the Board began automatically deducting contributions from fire paramedics' salaries on July 1, 1983, at which time the Municipal Fund ceased such deductions. At the time of the amendment in 1983, however, no provision was made for transfer of the fire paramedics' Municipal Fund contributions to the Firemen's Fund, and the Firemen's Fund was not, then or now, subject to the Retirement Systems Reciprocal Act (the Reciprocal Act) of the

Code (40 ILCS 5/20—101 *et seq.* (West 1992)), which allows transfer of contributions and concomitant transfer of service credits between participating funds.

Therefore, the Board advised the fire paramedics that it was not authorized to accept transfer of their Municipal Fund contributions. At the same time, the Municipal Fund sent the fire paramedics unsolicited forms to apply for refunds of their contributions. The Municipal Fund advised the fire paramedics that they could not remain members of the Municipal Fund system, they were ineligible for any retirement annuity benefits from the Municipal Fund, and they would cease to earn interest on their contributions after July 1, 1983. The fire paramedics, therefore, applied for and received refunds from the Municipal Fund.

In 1987, this court decided *Herhold* and held that, for purposes of computation of disability benefits, paramedics were entitled to service credit for periods prior to 1983 during which they performed the duties of their position. The court relied on the language of both section 6—152 (40 ILCS 5/6—152 (West 1992)), pertaining to ordinary disability benefits, and section 6—209, providing the method of computations of service credits for both disability and retirement annuity purposes, to reach that conclusion. *Herhold,* 118 Ill. 2d at 438-39.

The legislature passed section 6—210.1 effective August 23, 1989. It provides:

"Prior service as paramedic. Any fireman who (1) accumulated service credit in the Article 8 fund for service as a paramedic, and (2) has terminated such Article 8 service credit and received a refund of contributions therefor, may establish service credit in this Fund for such period of service as a fire paramedic under the Article 8 fund by making written application to the Board by January 1, 1992, and paying to this Fund (i) employee contributions based upon the actual salary received and the rates in effect for members of this Fund at the time of

such service as a paramedic, plus (ii) interest thereon at 4% per annum, compounded annually, from the date of termination of such service to the date of payment. The employer shall not be responsible for making any employer contributions for any credit established under this Section." 40 ILCS 5/6—210.1 (West 1992).

In October 1989, the Board filed suit against its counterpart at the Municipal Fund seeking to obtain the city's contributions to that fund made on behalf of the fire paramedics between 1977 and 1983. The circuit court and appellate court found, however, that they had no equitable power to compel the transfer of monies between the two funds absent express statutory authority. In December 1989, the fire paramedics initiated this suit for declaratory judgment. However, approximately 25% of the fire paramedics have made the contributions section 6—210.1 required.

## ANALYSIS

In construing a statute, a court must ascertain and give effect to the legislature's intent in enacting the statute. (*Business & Professional People for the Public Interest v. Illinois Commerce Comm'n* (1991), 146 Ill. 2d 175, 207; *Kirwan v. Welch* (1989), 133 Ill. 2d 163, 165.) A statute capable of two interpretations should be given that which is reasonable and which will not produce absurd, unjust, unreasonable or inconvenient results that the legislature could not have intended. (*Mulligan v. Joliet Regional Port District* (1988), 123 Ill. 2d 303, 312-13; *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 363.) An interpretation that renders a statute valid is always presumed to have been intended by the legislature (*Harris*, 111 Ill. 2d at 363), and a court is obliged to construe a statute to affirm its constitutionality (*Mulligan*, 123 Ill. 2d at 312).

The statutory language used by the legislature is usually the best indication of the intent of the drafters. (*Business & Professional People for the Public Interest*, 146 Ill. 2d at 207; *Kirwan*, 133 Ill. 2d at 165; *American Country Insurance Co. v. Wilcoxon* (1989), 127 Ill. 2d 230, 238.) Such language is to be given its plain or ordinary and popularly understood meaning (*Union Electric Co. v. Department of Revenue* (1990), 136 Ill. 2d 385, 397), and the fullest rather than narrowest possible meaning to which it is susceptible (*Lake County Board of Review v. Property Tax Appeal Board* (1988), 119 Ill. 2d 419, 423). However, a statute must be read as a whole (*Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 318; *Harris*, 111 Ill. 2d at 362), and no word or paragraph should be interpreted so as to be rendered meaningless (*Harris*, 111 Ill. 2d at 362-63). Therefore, a court must also consider the reason and necessity for the law, the evil to be remedied, and the object to be obtained by the statute. *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 364.

Legislative intent, however, remains the primary inquiry and controls the court's construction of a statute. (*Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189; *Carey v. Elrod* (1971), 49 Ill. 2d 464, 471.) Traditional rules of statutory construction are merely aids in determining legislative intent, and those rules must yield to such intent. *Carey*, 49 Ill. 2d at 471.

An amendment that contradicts a recent interpretation of a statute is an indication that such interpretation was incorrect and that the amendment was enacted to clarify the legislature's original intent. (*Bruni v. Department of Registration & Education* (1974), 59 Ill. 2d 6, 11-12.) The legislature is presumed to have intended statutes that relate to a single subject and that are controlled by a single policy to be consistent and harmoni-

ous. (*Williams v. Illinois State Scholarship Comm'n* (1990), 139 Ill. 2d 24, 52.) If possible, apparent conflicts are to be construed in harmony with each other. *Williams*, 139 Ill. 2d at 52.

Therefore, when the spirit and intent of the legislature are clearly expressed and the objects and purposes of a statute are clearly set forth, the courts are not bound by the literal language of a particular clause that might defeat such clearly expressed intent. (*Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Comm'n* (1969), 42 Ill. 2d 385, 395.) Ambiguity caused by a literal and confined construction may be modified, changed or rejected to conform to an otherwise clear legislative intent (*Community Consolidated School District Number 210 v. Mini* (1973), 55 Ill. 2d 382, 386; *Carey,* 49 Ill. 2d at 471-72; *Continental Illinois National Bank*, 42 Ill. 2d at 395), and the judiciary has the authority to read language into a statute that the legislature omitted through oversight (*People v. Chandler* (1989), 129 Ill. 2d 233, 253). Existing circumstances at the time the statute was enacted, contemporaneous conditions, and the object sought to be achieved all may be considered. (*Carey*, 49 Ill. 2d at 472.) With these rules of statutory construction in mind, we turn to sections 6—106 and 6—209 to determine if the legislature intended at the time of its amendment of section 6—106 in 1983 to allow fire paramedics to receive retirement annuity service credit for periods when no retirement annuity contributions were made. Our consideration of the issue thus presented begins with this court's decision in *Herhold*, which was the sole basis of the appellate court's reversal of the circuit court below.

In *Herhold*, the court considered the interrelationship between the amendment of the definition of fireman to include fire paramedic contained in section 6—106 and sections 6—152 and 6—209 of article 6 of the Code,

which defined ordinary disability benefits and addressed service credits for purposes of computation of such benefits, respectively. (*Herhold*, 118 Ill. 2d at 438-40.) Section 6—106 unambiguously included fire paramedic within the definition of fireman. Although the *Herhold* court therefore found resort to legislative history unnecessary (*Herhold*, 118 Ill. 2d at 441; see *Kraft, Inc.*, 138 Ill. 2d at 189), we note that in amending section 6—106 the legislature expressly recognized that the duties of a fire paramedic, and the attendant risks, were equivalent to those of a fire fighter. 83d Ill. Gen. Assem., House Proceedings, July 1, 1983, at 285.

In consideration of the unambiguous definition of fireman, *Herhold* focused on the application of sections 6—152 and 6—209 concerning computation of disability benefits and also found the plain language of those sections to be unambiguous. (*Herhold*, 118 Ill. 2d at 441.) Therefore, the court in *Herhold* did not look beyond such language. *Herhold*, 118 Ill. 2d at 441.

Specifically, the court relied on the language of section 6—152 that provided that a fire paramedic receive disability benefits for a period of time equal to "1/2 of the *total* service rendered by him prior to the time he became disabled" not to exceed a maximum benefit period of five years. (Emphasis added.) (40 ILCS 5/6—152 (West 1992).) We note the language relied on in *Herhold* of "the entire service of the fireman" refers not to the period of time for computation, but for payment of ordinary disability benefits. However, the legislature's use of the language "entire service," like its use of "total service" to define disability benefits, supports the conclusion that such benefits were to be computed differently than retirement annuity benefits because the use of different language indicated that the legislature intended different meanings and results. See *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 100.

In deciding *Herhold,* the court next considered the language of section 6—209, which contained the method of computation of service credits for ordinary disability benefits in a paragraph consisting of a single sentence. That single sentence provided that *"all* periods described in the preceding paragraph" were to be counted as periods of service for purposes of ordinary disability benefits. (Emphasis added.) 40 ILCS 5/6—209 (West 1992).

Thus, the use of the term "all" in the language of section 6—209 indicated that, for purposes of disability benefit service credits, no contributions were necessary. However, the "preceding paragraph" referred to in section 6—209 (40 ILCS 5/6—209 (West 1992)) defined the method of computing service credits for retirement annuity purposes for firemen employed on or after the effective date of article 6 and that paragraph required contributions for an itemized list of authorized absences before any service credit would occur for retirement annuity purposes. Thus, the legislature distinguished between the computation of disability service credits and retirement annuity service credits and, further, required contributions for retirement annuity service credits.

In its further analysis, *Herhold* specifically relied on the absence within article 6 of any indication that a fireman was to receive disability service credits only for those periods during which he contributed to the Firemen's Fund for such benefits rather than the length of time he had performed his duties. (*Herhold,* 118 Ill. 2d at 441.) Absent such contradiction of the plain language of sections 6—152 and 6—209, no ambiguity existed, and no further inquiry was necessary. See *Kraft, Inc.,* 138 Ill. 2d at 189.

Finally, although not discussed in *Herhold,* a fundamental difference exists between a disability benefit such as considered there and a retirement annuity, which we must address here. Payment of contributions for disabil-

ity benefits creates no right to receive a refund, and the amount of such benefit is unrelated to the amount of a particular employee's contributions. (40 ILCS 5/6—152 (West 1992).) In contrast, individual contributions for retirement annuities are refunded upon withdrawal. (40 ILCS 5/6—158 (West 1992).) Both a fireman's individual contributions made via salary deductions and the city's contributions are "accumulated to his credit." (40 ILCS 5/6—121, 6—125, 6—126 (West 1992).) Subject to a minimum annuity (40 ILCS 5/6—123, 6—128 (West 1992)), an employee receives his retirement annuity from such amounts accumulated specifically to his individual credit (40 ILCS 5/6—121, 6—125, 6—126 (West 1992)).

The court's decision in *Herhold* was supported by the language of section 6—152 requiring ordinary disability service credit for the total period of service, the language of section 6—209 defining ordinary disability service credit in terms of retirement annuity service credit with the important distinction that no contributions were required, the absence of any indication that ordinary disability benefits were to be conditioned on payment of contributions, and the fundamental nature of disability benefits. However, because none of these factors are present in this instance, *Herhold* is not controlling.

As this court did in *Herhold*, we begin with the language of the statute. (See *Kirwan*, 133 Ill. 2d at 165.) Although section 6—152 is inapplicable to retirement annuity service credits, the use of the adjective "total" in section 6—152 (40 ILCS 5/6—152 (West 1992)) to describe the service on which disability benefits are to be based creates a presumption that the legislature intended by the absence of such adjective in defining the method of computation of service credits for retirement annuity purposes that such service credits be based on something other than total service. (See *Nelson*, 31 Ill. 2d at 100.) Had the legislature intended ordinary disabil-

ity benefits and retirement annuity benefits to be identically computed, the "total" service language of section 6—152 (40 ILCS 5/6—152 (West 1992)) would be meaningless. We may not so construe any word of a statute as superfluous or meaningless. *Harris*, 111 Ill. 2d at 362-63.

Turning to section 6—209, on which this court also relied in *Herhold*, we again note that the legislature specifically defined disability credits as "all" periods of service and distinguished between service credits for purposes of retirement annuities and for purposes of disability benefits. (40 ILCS 5/6—209 (West 1992).) Such language clearly indicates that the legislature intended a different method of computation for the two different types of benefits. See *Nelson*, 31 Ill. 2d at 100.

We must look to the statute as a whole to ascertain the intent of the legislature with regard to this different method of calculation. (See *Casteneda*, 132 Ill. 2d at 318.) We begin such inquiry with other sections contained within the same article of the Code and enacted in 1963 at the same time as sections 6—209 and 6—152.

Sections 6—158 and 6—159 (40 ILCS 5/6—158, 6—159 (West 1992)) require repayment of any refunds, plus interest, before a fireman can receive service credits for retirement annuity purposes. Similarly, section 6—210 allows a policeman to receive service credits for prior service as such after becoming a fireman only if contributions are made equivalent to that which would have been paid if the entire service occurred as a fireman. (40 ILCS 5/6—210 (West 1992).) Finally, prior-service annuities, which accrued under the legislation that existed prior to the revision of article 6, are nevertheless supported by contributions transferred to the Firemen's Fund from its predecessor. (40 ILCS 5/6—198 (West 1992).) Thus, all of the provisions relating to retirement annuity service credits contained within article 6 of the

Code indicate that the legislature intended service credits to be premised on payment of contributions.

In construing the provisions of the article that created the Firemen's Fund, we also look to other articles of the Code that are concerned with the same subject and, therefore, that share the same purpose. (See *Williams*, 139 Ill. 2d at 52.) Notably, the Reciprocal Act of the Code is legislation specifically concerned with the "continuity and preservation of pension credit *** in the case of employees transferring employment *** [for the purpose of] assur[ing] full and continuous pension credit for all service in public employment which is covered by a retirement system." (40 ILCS 5/20—101 (West 1992).) It further provides that acceptance of a refund is a waiver of pension credit unless repayment of the refund, including interest, is made. (40 ILCS 5/20—118 (West 1992).) Thus, we can conclude from these provisions that the legislature intended retirement annuity service credits for service in a prior system to be conditioned on payment of the appropriate contributions.

The fire paramedics correctly note that the Reciprocal Act was not applicable in this instance because it requires that a particular retirement system accept its provisions before it applies. (40 ILCS 5/20—129 (West 1992).) Article 6 contains no such acceptance. However, of the 18 separate retirement systems created under the articles of the Code, the legislature provided for acceptance of the Reciprocal Act in 14 instances. See 40 ILCS 5/2—150 (West 1992) (General Assembly Retirement System); 40 ILCS 5/7—215 (West 1992) (Illinois Municipal Retirement Fund); 40 ILCS 5/8—236 (West 1992) (Municipal Employees', Officers', and Officials' Annuity and Benefit Fund—cities over 500,000 inhabitants); 40 ILCS 5/9—236 (West 1992) (County Employees' and Officers' Annuity and Benefit Fund—counties over 500,000 inhabitants); 40 ILCS 5/10—108 (West 1992) (forest preserve

district employees' annuity and benefit fund); 40 ILCS 5/11–219 (West 1992) (Laborers' and Retirement Board Employees' Annuity and Benefit Fund—cities over 500,000 inhabitants); 40 ILCS 5/12–189 (West 1992) (Park Employees' and Retirement Board Employees' Annuity and Benefit Fund—cities over 500,000 inhabitants); 40 ILCS 5/13–211 (West 1992) (Metropolitan Water Reclamation District Retirement Fund); 40 ILCS 5/14–145 (West 1992) (State Employees' Retirement System of Illinois); 40 ILCS 5/15–192 (West 1992) (State Universities Retirement System); 40 ILCS 5/16–193 (West 1992) (Teachers' Retirement System of the State of Illinois); 40 ILCS 5/17–152 (West 1992) (Public School Teachers' Pension and Retirement Fund—cities over 500,000 inhabitants); 40 ILCS 5/18–157 (West 1992) (Judges Retirement System of Illinois); 40 ILCS 5/19–216 (closed funds: division 1. House of Correction Employees' Pension Fund; division 2. Public Library Employes' Pension Fund).

The legislature determined that acceptance of the Reciprocal Act was inappropriate for only four disability and retirement systems within the Code, one of which is the Firemen's Fund. Those four funds each provides benefits for police or fire fighters in cities under or over populations of 500,000. (See 40 ILCS 5/3–101 *et seq.* (West 1992) (police pension fund—municipalities 500,000 and under); 40 ILCS 6/4–101 *et seq.* (West 1992) (firefighters' pension fund—municipalities 500,000 and under); 40 ILCS 5/5–101 *et seq.* (West 1992) (Policemen's Annuity and Benefit Fund—cities over 500,000 inhabitants).) The fund created for policemen in the City of Chicago contains provisions that mirror those of the Firemen's Fund exactly, with the exception of the provisions relating to fire paramedics. Similarly, the police and fire fighters funds for municipalities with fewer than 500,000 inhabitants contain mirror provisions that allow limited

prior service credits only upon payment of appropriate contributions and interest (40 ILCS 5/3—110, 5/4—108 (West 1992)) and provisions which allow reinstatement of service credits after receipt of a refund only upon repayment of such refund plus interest (40 ILCS 5/3—124, 5/4—116 (West 1992)).

The absence of acceptance of the Reciprocal Act in the enabling legislation for the various police and fire fighters retirement funds indicates that the legislature intended those systems to be closed for purposes of service credits to employees transferring from other public employment. The legislature's decision indicates the intent that a transferring employee neither makes contributions nor receives service credits for prior service. The absence of acceptance of the Reciprocal Act, however, has no bearing on the legislature's intent with regard to the necessity of contributions as a prerequisite to receiving service credits. Such absence cannot be construed as an indication from the legislature that service credits were to be allowed without contributions. Rather, the provisions of the articles of the entire Code demonstrate that the legislature intended retirement annuity service credits to be conditioned on payment of contributions. Thus, although we recognize that the provisions of the Reciprocal Act do not apply to article 6, we rely on such provisions as an indication of the purpose and spirit of the entire Code of which both the Reciprocal Act and article 6 are part so that the entire statute may be read consistently and in harmony with such purpose. (See *Williams*, 139 Ill. 2d at 52.) Because our reliance on the Reciprocal Act is thus limited to its bearing on our determination of the controlling overall intent of the legislature in this instance, we need not address the various arguments of the parties concerning the Board's role or lack thereof in the legislature's determination not to in-

clude acceptance of the provisions of the Reciprocal Act in article 6.

We find nothing in the entire Code to indicate that the legislation intended fire paramedics alone of all the employees encompassed within its provisions to receive retirement annuity service credits for periods when no concomitant contributions were received. Rather, the entire statute clearly indicates that retirement service credits were intended to be conditioned upon payment of contributions.

Both the fire paramedics here and this court in *Herhold* relied on the failure of the Board to accept transfer of the fire paramedics' Municipal Fund contributions at the time the legislature amended the definition of fireman to include fire paramedic in 1983. However, were we to allow the conduct of the parties to control our determination of the constitutionality of this statute, we would also note that the fire paramedics themselves apparently recognized the necessity of contributions as a prerequisite to receiving retirement annuity service credits when they approached the Board seeking to transfer their Municipal Fund contributions.

In addition, neither the fire paramedics nor the Board was without recourse in 1983 when the fire paramedics' constitutionally protected contract right arose. Both chose to accept the benefit of their own subjective interpretation of the provisions of article 6. The Board could have accepted the transfer of the fire paramedics' Municipal Fund contributions pending enactment of legislation just as it began deducting contributions in July 1983 in anticipation of passage of the amendment of section 6—106 in September 1983. So, too, just as the fire paramedics sought a declaration that section 6—210.1 was unconstitutional below, they could have sought a judicial determination that the legislature by its amendment of section 6—106 in 1983 intended to allow the fire para-

medics the uncompensated service credits they now seek. The fire paramedics could also have sought further legislation such as section 6—210.1 to allow transfer to the Firemen's Fund and declined the Municipal Fund's refunds or rolled such refunds over into a similar retirement vehicle until such legislation was passed.

*Herhold* also noted that the fire paramedics were left at the mercy of the Municipal and Firemen's Funds. (*Herhold*, 118 Ill. 2d at 440.) More aptly described, however, the fire paramedics as well as the Board were left at the mercy of the legislature, which created the ambiguity we today resolve.

Finally, this court in *Herhold* also found it incredible that the legislature intended to confer on the fire paramedics the advantage of joining the Firemen's Fund while at the same time denying them the benefit of their prior service credits for ordinary disability. (*Herhold*, 118 Ill. 2d at 440.) In light of the purpose and spirit of the Code that retirement annuity service credits be based on contributions for such credits, which is clearly and repeatedly expressed throughout the Code's many articles, we find it equally incredible that the legislature intended to confer on fire paramedics alone the benefit of retirement service credit absent such contributions. Therefore, construing all the sections of article 6 and the entire Code consistently and in harmony with its overriding purpose, we find that the legislature did not intend that fire paramedics receive service credits for purposes of computation of retirement annuity benefits for periods during which they performed the duties of their positions prior to 1983 and for which they made no corresponding contribution. Section 6—210.1 does not, therefore, unconstitutionally diminish the fire paramedics' rights, but rather, enhances such rights by conferring on them the right to receive such service credits upon payment of the appropriate contributions. We note that the

122

Board admitted that the limitation contained in section 6—210.1 permitting such contribution no later than January 1, 1992, was tolled during the pendency of this action. Therefore, the fire paramedics have 25 months from the date of the termination of this litigation to comply with the provisions of section 6—210.1 and receive service credits for those periods during which the fire paramedics participated in the Municipal Fund prior to the amendment of section 6—106 in 1983.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*