(No. 97986.—

THE PEOPLE *ex rel.* JAMES E. RYAN, Attorney General, Appellant, v. AGPRO, INC., *et al.,* Appellees.

*Opinion filed February 3, 2005.*

Lisa Madigan, Attorney General, of Springfield (Gary Feinerman, Solicitor General, and Erik G. Light, Assistant Attorney General, of Chicago, of counsel), for appellant.

Donald Q. Manning, of McGreevy, Johnson & Williams, P.C., of Rockford, for appellees.

JUSTICE GARMAN delivered the opinion of the court:

In this case we must decide whether section 42(e) of the Environmental Protection Act (the Act) (415 ILCS 5/1 *et seq.* (West 2002)), authorizes a court to issue a mandatory injunction requiring a polluter to clean up contamination it caused. In 1994 the State brought suit against defendants Agpro, Inc., and David J. Schulte, as an individual and as president of Agpro, Inc., seeking injunctive relief, recovery of remediation costs, and civil penalties. In 2002 the matter proceeded to a bench trial, after which the circuit court of Ogle County awarded certain remediation costs and imposed a civil penalty, but refused injunctive relief. The State appealed and defendants cross-appealed. The appellate court reversed and remanded on an issue pertaining to remediation costs, but affirmed the circuit court in all other respects, including the denial of injunctive relief. 345 Ill. App. 3d 1011. The State then petitioned this court for leave to appeal the denial of injunctive relief, which we allowed pursuant to Rule 315 (177 Ill. 2d R. 315).

## BACKGROUND

We state only those facts necessary to understand the single question before this court. The appellate court's opinion includes a more complete statement. See 345 Ill. App. 3d at 1014-18.

Between 1988 and 1993 defendants operated a business applying fertilizers and pesticides to farm fields. The business was based at a site in the town of Woosung (the Agpro site). The State alleged, and the circuit court found, that defendants caused or allowed the soil at the Agpro site to be contaminated by pesticides. The contaminants are also present in the groundwater and in several wells immediately surrounding the Agpro site. In 1991 federal authorities remedied the contamination of the wells by installing filtration systems in eight private residences. As of 2000 testing of wells on and adjacent to the Agpro site continued to show pesticide contamination.

The State asked the circuit court to order defendants to take certain actions to clean up the Agpro site, such as removal of all contaminated soil. The circuit court refused, citing three express grounds, the first of which was that "there is no legal basis to issue an injunction which requires the Defendants to perform affirmative acts." The appellate court found this ground sufficient to affirm, and thus did not reach any other grounds for the denial of injunctive relief. Before the appellate court, the State argued that section 42(e) of the Act authorizes issuance of a mandatory injunction requiring defendants to clean up the Agpro site. At all relevant times section 42(e) of the Act provided that, "[t]he State's Attorney of the county in which the violation occurred, or the Attorney General, may *** institute a civil action for an injunction to restrain violations of this Act." 415 ILCS 5/42(e) (West 2002). The appellate court reasoned that the word "restrain" in section 42(e) shows "that the legislature contemplated a preventative injunction or restraining order rather than a mandatory injunction commanding a defendant to do some affirmative act." 345 Ill. App. 3d at 1019. The appellate court then considered and rejected a number of contrary arguments.

226

The appellate court filed its decision on January 27, 2004. Some six months later the General Assembly amended section 42(e) to provide for an injunction, "prohibitory or mandatory," to restrain violations of the Act and to permit the circuit court to "require such other actions as may be necessary to address violations of this Act." Pub. Act 93—831, § 5, eff. July 28, 2004 (amending 415 ILCS 5/42(e)).

ANALYSIS

Whether a mandatory injunction may issue in this case is a question of statutory construction, which we review *de novo. Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503 (2000). "The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. [Citation.] The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. [Citation.]" *Caveney v. Bower*, 207 Ill. 2d 82, 87-88 (2003).

In this case, section 42(e) of the Act, the only authority the State cites as authorizing the mandatory injunction it seeks, permits an "injunction to restrain violations of this Act." 415 ILCS 5/42(e) (West 2002). The appellate court relied on the meaning of the word "restrain" to conclude the legislature did not contemplate a mandatory injunction in section 42(e). 345 Ill. App. 3d at 1019. We agree. The phrase "to restrain" modifies the word "injunction." The word "restrain," as ordinarily used, connotes imposing limits on action. According to Merriam-Webster's Collegiate Dictionary, "restrain" means "to prevent from doing, exhibiting, or expressing something *** to limit, restrict, or keep under control *** to moderate or limit." Merriam-Webster's Collegiate Dictionary 996 (10th ed. 2000). According to Black's Law Dictionary, it means "limit, confine, abridge *** [t]o prohibit from action; to put compulsion upon *** [t]o keep in check." Black's Law Dictionary 1314 (6th ed. 1990). None of these definitions connote requiring or

causing someone to do something. Based on the plain and ordinary meaning of the word "restrain," we conclude the legislature did not intend in section 42(e) to authorize a mandatory injunction such as the State seeks. The State offers several arguments to the contrary, which we address *seriatim*.

First, the State suggests section 42(e) is ambiguous because the word "restrain" permits a reasonable interpretation that includes a mandatory injunction. The State points out that the fifth edition of Black's Law Dictionary gives one of the meanings of "restrain" as "enjoin," which, in turn, can denote a mandatory injunction. Black's Law Dictionary 1181 (5th ed. 1979). However, the sixth edition of Black's Law Dictionary, the last to include a definition of "restrain," does not list "enjoin" as a synonym. Black's Law Dictionary 1314 (6th ed. 1990). Moreover, assuming *arguendo* that "restrain" can mean "enjoin" in some contexts, it does not carry that meaning in section 42(e). If it did, the phrase "injunction to restrain" would mean "injunction to enjoin," which is redundant. If possible, we will avoid constructions that render any term superfluous or meaningless. *In re Marriage of Kates*, 198 Ill. 2d 156, 167 (2001).

Second, the State points out various provisions of the Act that seem to contemplate mandatory injunctions. Section 45(d) concerns third-party complaints in cases in which the State "seeks to compel the defendant to remove the waste or otherwise clean up the site." 415 ILCS 5/45(d) (West 2002). Section 58.1(a)(2) refers to persons "required to perform investigations and remediations." 415 ILCS 5/58.1(a)(2) (West 2002). Section 58.9(a)(1) limits suits seeking "to require any person to conduct remedial action" to the remediation of pollution that the defendant proximately caused. 415 ILCS

5/58.9(a)(1) (West 2002). Section 58.9(b) requires notice when the State "seeks to require a person who may be liable pursuant to this Act to conduct remedial activities." 415 ILCS 58.9(b) (West 2002). The State correctly urges that a statute must be construed as a whole. *Kates*, 198 Ill. 2d at 163. Thus, any part of the Act may provide some evidence of what the legislature intended in section 42(e). However the strongest evidence is, of course, the language of section 42(e) itself. Because the meaning of section 42(e) is plain, inferences based on language found in scattered ancillary provisions of the Act are insufficient to change the outcome of this case. See *Whitman v. American Trucking Associations*, 531 U.S. 457, 468, 149 L. Ed. 2d 1, 13, 121 S. Ct. 903, 909-10 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in *** ancillary provisions—it does not, one might say, hide elephants in mouseholes").

Third, the State argues that the legislature's recent amendment of section 42(e) "clarifies" what the legislature meant by the phrase "injunction to restrain" by stating that it includes mandatory injunctions. The State relies on *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund of Chicago*, 155 Ill. 2d 103 (1993). In *Collins*, we stated that "[a]n amendment that contradicts a recent interpretation of a statute is an indication that such interpretation was incorrect and that the amendment was enacted to clarify the legislature's original intent." *Collins*, 155 Ill. 2d at 111, citing *Bruni v. Department of Registration & Education*, 59 Ill. 2d 6, 11-12 (1974). Defendants reply that *Roth v. Yackley*, 77 Ill. 2d 423 (1979), precludes consideration of the amendment as clarification of the original meaning of section 42(e). In *Roth*, we held the legislature could not "constitutionally overrule a decision of this court by declaring that an amendatory act applies retroactively to

cases decided before its effective date." *Roth*, 77 Ill. 2d at 429. For the following reasons, we conclude *Roth* precludes giving the recent amendment controlling weight, and that *Collins* is distinguishable.

*Roth* concerned the following situation. In *People v. DuMontelle*, 71 Ill. 2d 157 (1978), we held that fines and costs were not "reasonable terms and conditions of probation" within the meaning of section 10 of the Cannabis Control Act, and thus could not be imposed under that section. In response, the legislature amended section 10 to expressly permit imposition of fines and costs and stated that the amendment was a declaration of existing law and thus applicable to events prior to the effective date of the amendment. *Roth*, 77 Ill. 2d at 426, quoting Pub. Act 80—1202, § 3, eff. June 30, 1978. We held the constitutional doctrine of separation of powers precludes the legislature from assuming this court's role by retroactively applying new statutory language. *Roth*, 77 Ill. 2d at 428-29, citing Ill. Const. 1970, art. II, § 1. We stated that, "[w]hile the General Assembly has the power *** to amend statutes prospectively if it believes that a judicial interpretation was at odds with its intent [citations], it is the function of the judiciary to determine what the law is and apply statutes to cases. [Citations.]" *Roth*, 77 Ill. 2d at 429.

In *Roth*, the amendment at issue purported to reverse a decision of this court. In this case the legislature responded to a decision of the appellate court. That difference, however, is immaterial. *In re Marriage of Cohn*, 93 Ill. 2d 190, 203 (1982) (the legislature "cannot retroactively alter a statute to overrule a decision of a reviewing court"). The constitution provides that no *branch* of government shall exercise the powers of another (Ill. Const. 1970, art. II, § 1), and the appellate court is a part of the judicial branch of government.

The State seeks to distinguish *Roth* by pointing out

that, in *Roth*, the amendment expressly stated that it was a retroactive declaration of existing law. However, in this case the State as a party, not the legislature, is trying to vest the recent amendment with controlling weight by arguing that it is a retroactive "clarification" of the original meaning of section 42(e). We reject the State's argument. We conclude the recent amendment is not a retrospective "clarification" of existing law, but is instead a change in the law.

*Collins*, the case relied upon by the State, is not to the contrary. In *Collins* the legislature had, in 1983, redefined fire paramedics as "firemen" for purposes of participation in the Firemen's Annuity and Benefit Fund (Firemen's Fund). In 1987, in *Herhold v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 118 Ill. 2d 436 (1987), we construed the applicable statute to mean that paramedics were entitled to credit, for purposes of calculating disability benefits from the Firemen's Fund, for years of service prior to 1983, despite the fact paramedics did not contribute to the Firemen's Fund during those years. In the wake of *Herhold*, the legislature amended the statute to provide that, for retirement purposes, paramedics could receive credit for pre-1983 years of service only if they paid contributions for those years. The paramedics challenged the amendment, arguing that it unconstitutionally diminished vested pension rights. We rejected the paramedics' challenge, finding that the legislature had not intended to give the paramedics credit for pre-1983 service for retirement purposes without payment of contributions. *Collins*, 155 Ill. 2d at 120-21.

*Collins* is clearly distinguishable. The amendment at issue in *Collins*, though enacted in response to *Herhold*, did not attempt to reverse *Herhold*. While *Herhold* concerned disability, the amendment concerned retirement. If we accepted the State's argument in this case, the

recent amendment to section 42(e), in effect, would reverse the appellate court by "clarifying" the statute in a way that flatly contradicts the appellate court's holding that the plain meaning of section 42(e) excludes mandatory injunctions. In order to avoid confusion, we must distinguish a line of cases not cited to us by either party. In those cases, we have relied on a subsequent amendment as some evidence that a lower court has misconstrued what the legislature originally intended in a statute. See, *e.g.*, *Mattis v. State Universities Retirement System*, 212 Ill. 2d 58, 83-84 (2004); *In re Detention of Lieberman*, 201 Ill. 2d 300, 320-21 (2002); *Central Illinois Public Service Co. v. Pollution Control Board*, 116 Ill. 2d 397, 406-07 (1987); *People v. Rink*, 97 Ill. 2d 533, 540-41 (1983). In this case, the State argues the amendment "clarifies" section 42(e) in a way that would, in effect, reverse the appellate court. However, as we have explained, the appellate court *correctly* based its judgment on the plain meaning of section 42(e). We have never held that a subsequent amendment may replace the plain meaning as the best evidence of the legislature's original intent. Thus, cases in which we have relied on subsequent amendments to bolster our conclusion regarding the plain meaning or to clarify an ambiguous statute are inapposite.

Fourth, the State suggests that even if section 42(e) permits only prohibitory injunctions, the defendants may nevertheless be ordered to clean up the Agpro site. The State relies on *Illinois State Toll Highway Authority v. Amoco Oil Co.*, 336 Ill. App. 3d 300 (2003). In *Amoco Oil*, the appellate court had to decide whether the Authority had stated a claim against Amoco under the Contribution Act, which became effective on March 1, 1978. The Authority's contribution claim was based on its obligation under the Environmental Protection Act to clean up contamination from gas stations located on land owned

by the Authority and leased to Amoco. Relying on *People v. Brockman*, 143 Ill. 2d 351 (1991), Amoco argued the Authority failed to state a claim for contribution because it failed to allege any specific times on or after March 1, 1978, at which contamination occurred. The appellate court rejected Amoco's argument and distinguished *Brockman* by reasoning that, while the third-party complaint in *Brockman* failed completely to allege that contamination occurred at specific times, the Authority had alleged contamination at specific times before March 1, 1978, and had alleged that "this contamination 'continued, migrated, and exacerbated [*sic*] since March 1, 1978.' " *Amoco Oil*, 336 Ill. App. 3d at 315. The court concluded that, while the Authority could not state a claim for contribution just by alleging violations of the Act that occurred before March 1, 1978, it did state a claim by further alleging that such violations continued on or after that date. *Amoco Oil*, 336 Ill. App. 3d at 315. The State argues the contamination caused by defendants is a continuing violation similar to the continuing violation alleged in *Amoco Oil* and the only way a court can "restrain" such a continuing violation is by an injunction requiring defendants to clean up.

We decline to apply *Amoco Oil* as the State suggests. *Amoco Oil* did not concern section 42(e) or mandatory injunctions. Assuming, *arguendo*, that *Amoco Oil* recognized the concept of a "continuing violation" for purposes of stating a claim for contribution, we could not apply that concept to the question at bar. If every consequence of a violation of the Act were a continuing violation subject to an "injunction to restrain" under section 42(e), then indeed mandatory injunctions would be permitted. However, as we have explained, the plain meaning of the phrase "injunction to restrain" shows the legislature did intend to limit relief under section 42(e) to prohibitory injunctions. In other words, even if

*Amoco Oil* is relevant to the case at bar, it is simply insufficient to overcome the plain meaning of section 42(e). Fifth, the State suggests it must be possible to "restrain" a failure to clean up, otherwise section 42(e) could not be used to restrain other failures to act, such as failure to shut the valve of a pipe discharging contaminants or failure to fix a leaking underground tank. This argument also fails because it asks us to ignore the ordinary meanings of words. A person who leaves a valve open or lets a tank go on leaking *is polluting*, just as a person who opens the tap and leaves the room *is filling* the bathtub. Ongoing actions like polluting or filling the tub may be "restrained"—by ordering the person to stop—without doing violence to the ordinary meaning of the word. Defendants, however, are not now polluting; they polluted. Moreover, as the appellate court stated, the plain language of the Act prohibits depositing contaminants on the land so as to create a water pollution hazard; "it does not prohibit the mere existence of a water pollution hazard." 345 Ill. App. 3d at 1019, citing 415 ILCS 5/12(d) (West 2000).

In sum, none of the State's arguments overcome the plain and unambiguous meaning of section 42(e). We note further that section 42(e), as we have construed it, forms part of a reasonable remedial scheme. Under section 43(a) of the Act, in certain emergency situations not alleged to be present in this case, courts are authorized to "require such *** action as may be necessary." 415 ILCS 5/43(a) (West 2002). This broad authorization presumably includes any mandatory injunction "as may be necessary." Moreover, as the appellate court noted, in any situation where section 43(a) does not apply, the State may itself clean up and then recover costs from those who are liable under the Act. 345 Ill. App. 3d at 1022, citing 415 ILCS 5/22.2(f) (West 2002). Thus, in emergencies a polluter may be ordered to clean up. In all

other circumstances, the State may clean up and send the polluter the bill. In any case, a polluter may prefer to clean up voluntarily so as to control the costs. The legislature could reasonably have chosen such a remedial scheme. The State argues the purposes of the Act are better served when polluters can be ordered to clean up even in nonemergency circumstances. However, because the language of section 42(e) is plain and unambiguous, we cannot consider the State's policy arguments.

## CONCLUSION

For the foregoing reasons, we hold that section 42(e) of the Act does not authorize a mandatory injunction ordering defendants to take affirmative action to clean up the Agpro site. Because of our disposition, we need not address the other reasons the circuit court gave to explain its denial of injunctive relief. The judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE KARMEIER took no part in the consideration or decision of this case.