NORTHERN KANE EDUCATIONAL CORPORATION, Petitioner-Appellant, v. CAMBRIDGE LAKES EDUCATION ASSOCIATION, IEA-NEA, *et al.*, Respondents-Appellees.

Fourth District    No. 4—08—0881

Opinion filed September 23, 2009.

Stanley B. Eisenhammer (argued), John L. Di John, and Michelle A. Todd, all of Hodges, Loizzi, Eisenhammer, Rodick & Kohn, of Arlington Heights, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Sharon A. Purcell (argued), Assistant Attorney General, of counsel), for appellee Illinois Educational Labor Relations Board.

Laurie M. Burgess (argued), of Burgess Law Offices, P.C., of Chicago, for appellee Cambridge Lakes Education Association, IEA-NEA.

JUSTICE STEIGMANN delivered the opinion of the court:

In April 2008, correspondent, the Cambridge Lakes Education Association, IEA-NEA (Union), filed a majority interest representation petition pursuant to section 7 of the Illinois Educational Labor Relations Act (Education Labor Act) (115 ILCS 5/7 (West 2008)) with their correspondent in this appeal, the Illinois Educational Labor Relations Board (Board), seeking to represent certain Cambridge Lakes Charter School (Cambridge Lakes) employees. In May 2008, petitioner, Northern Kane Educational Corporation (Northern Kane)—Cambridge Lakes' governing body—objected to the Union's majority interest representation petition, claiming that the Board lacked jurisdiction over Northern Kane. In November 2008, the Board found, in pertinent part, that it had jurisdiction over Northern Kane because Northern Kane was an educational employer under section 2(a) of the Education Labor Act (115 ILCS 5/2(a) (West 2008)).

Northern Kane appeals, arguing that (1) the Education Labor Act does not apply to charter schools and (2) even if it did, Northern Kane is not an "educational employer" as that term is defined under the Education Labor Act. We agree that the Education Labor Act does not apply to charter schools and reverse the Board's decision.

## I. BACKGROUND

In April 2008, the Union filed a majority interest representation petition with the Board, seeking to represent certain Cambridge Lakes employees. In May 2008, Northern Kane, as Cambridge Lakes' governing body, objected to the Union's majority interest representation petition, arguing that the Board lacked jurisdiction over Northern Kane because (1) the Illinois Charter Schools Law (105 ILCS 5/27A—1 through 27A—13 (West 2008)) exempted Illinois charter schools— including Northern Kane—from "other [s]tate laws and regulations under the School Code" (105 ILCS 5/1 through 36 (West 2008)) and (2) even if charter schools were not exempt, Northern Kane was not an "educational employer" under section 2(a) of the Education Labor Act (115 ILCS 5/2(a) (West 2008)).

Section 27A—5(g) of the Charter Schools Law—the section that Northern Kane claims exempts charter schools from other state laws— states as follows:

"(g) A charter school shall comply with all provisions of this [a]rticle [(which is the article of the School Code dealing only with charter schools)] and its charter. A charter school is exempt from all other [s]tate laws and regulations in the School Code [(105 ILCS 5/1 through 36) (West 2008))] governing public schools and local school board policies, except the following:

(1) Sections 10—21.9 and 34—18.5 of the School Code [(105 ILCS 5/10—21.9, 34—18.5 (West 2008))] regarding criminal history records checks and checks of the Statewide Sex Offender Database of applications for employment;

(2) Sections 24—24 and 34—84A of the School Code [(105 ILCS 5/24—24, 34—84A (West 2008))] regarding discipline of students;

(3) The Local Governmental and Governmental Employees Tort Immunity Act [(745 ILCS 10/1—101 through 1—210 (West 2008))];

(4) Section 108.75 of the General Not For Profit Corporation Act of 1986 [(805 ILCS 105/108.75 (West 2008))] regarding indemnification of officers, directors, employees, and agents;

(5) The Abused and Neglected Child Reporting Act [(325 ILCS 5/1 through 11.7 (West 2008))];

(6) The Illinois School Student Records Act [(105 ILCS 10/1 through 10 (West 2008))]; and

(7) Section 10—17a of the School Code [(105 ILCS 5/10—17a (West 2008))] regarding school report cards." 105 ILCS 5/27A—5(g) (West 2008).

An "educational employer"—which Northern Kane claims it is not—is defined under the Education Labor Act as

"the governing body of a public school district, combination of public school districts, including the governing body of joint agreements of any type formed by [two] or more school districts, public community college district or [s]tate college or university, and any [s]tate agency whose major function is providing educational services." 115 ILCS 5/2(a) (West 2008).

In November 2008, after considering the Charter Schools Law and the Education Labor Act, the Board found, in pertinent part, that it had jurisdiction over Northern Kane because it was an educational employer under the Education Labor Act. In so finding, the Board implicitly concluded that Northern Kane was not exempt from "other [s]tate laws." As a result of the Board's decision, the Union became a certified bargaining unit, authorized to represent certain Cambridge Lakes employees.

This appeal followed.

## II. NORTHERN KANE'S CLAIM THAT CHARTER SCHOOLS ARE EXEMPT FROM THE EDUCATION LABOR ACT

Northern Kane argues that the Education Labor Act does not apply to charter schools and thus does not confer jurisdiction upon the Board over Northern Kane as the governing body of Cambridge Lakes. Specifically, Northern Kane contends that the plain language of section 27A—5(g) (105 ILCS 5/27A—5(g) (West 2008)) exempts charter schools from other state laws, which includes the Education Labor Act. The Union responds that (1) the Education Labor Act applies to charter schools and (2) Northern Kane is an educational employer as that term is defined under the Education Labor Act. We agree with Northern Kane that the Education Labor Act does not apply to charter schools.

### A. The Standard of Review and Statutory Interpretation

The issue presented in this case is one of statutory interpretation—namely, whether section 27A—5(g) of the Charter Schools Law (105 ILCS 5/27A—5(g) (West 2008)) exempts charter schools from other state laws such as the Education Labor Act. As such, our review is *de novo. Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 370, 864 N.E.2d 162, 165 (2007).

"The cardinal rule of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the legislature's intent." *People v. Hanna*, 207 Ill. 2d 486, 497, 800 N.E.2d 1201, 1207 (2003). The most reliable indicator of such intent is the plain language of the statute. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504, 732 N.E.2d 528, 535 (2000). This language should be given its "plain, ordinary[,] and popularly understood meaning." *Hanna*, 207 Ill. 2d at 498, 800 N.E.2d at 1207. When the statutory language is clear, a reviewing court need not resort to extrinsic aids of construction, such as legislative history. *Allstate Insurance Co. v. Menards, Inc.*, 202 Ill. 2d 586, 594, 782 N.E.2d 258, 263 (2002). Moreover, "[w]here a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions, despite the lack of negative words of limitation." *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 442, 593 N.E.2d 522, 527 (1992).

### B. Section 27A—5(g) of the Charter Schools Law and This Case

The plain language of section 27A—5(g) of the Charter Schools Law states, in pertinent part, that "[a] charter school is exempt from *all other [s]tate laws* and regulations in the School Code governing public schools and local school board policies," except for certain specified statutes. (Emphasis added.) 105 ILCS 5/27A—5(g) (West 2008). These seven specific exceptions—of which the Education Labor

Act is not one—concern safety, administrative, and reporting requirements.

The plain language of section 27A—5(g) is clear. Charter schools are exempt from "all other [s]tate laws" with limited, specified exceptions, of which the Education Labor Act is not one. Thus, to conclude that charter schools are not exempt from the Education Labor Act would be to assume the legislature overlooked the Education Labor Act when it drafted the list of specific exceptions. We reject this assumption and conclude that the omission of the Education Labor Act from the list of specified exceptions is not somehow a legislative oversight.

We find support for this conclusion in three separate sections of the Charter Schools Law. First, the legislature specified certain laws that were to apply to charter schools in section 27A—5(c) (105 ILCS 5/27A—5(c) (West 2008)). Specifically, the legislature made clear that charter schools were to be subject to the Freedom of Information Act (FOIA) (5 ILCS 140/1 through 11 (West 2008)) and the Open Meetings Act (5 ILCS 120/1 through 7 (West 2008)). 105 ILCS 5/27A—5(c) (West 2008). Second, as previously stated, the legislature listed specific and extensive exceptions to the charter schools' exemption from other state laws in section 27A—5(g)(1). See 105 ILCS 5/27A—5(g)(1) through (g)(7) (West 2008) (excluding the following from the blanket exemption provided to charter schools: (a) criminal history and sex offender background checks, (b) student discipline, (c) government tort immunity, (d) not-for-profit indemnification rules, (e) abused and neglected child reporting requirements, (f) student record care, and (g) report card standards). Third, the legislature specifically *expressed* the policy underlying the Charter Schools Law in section 27A—2(c), which was, in part, to create "more flexible ways of educating children" (105 ILCS 5/27A—2(c) (West 2008)).

Therefore, to conclude that the legislature did not intend charter schools to be excluded from the Education Labor Act, this court would have to, for example, first conclude that the legislature included acts such as the FOIA—an act infrequently used to obtain information from most public schools—but simply overlooked the Education Labor Act—an act that public school officials are familiar with and that has traditionally been, and was at the time the Charter Schools Law was enacted, the subject of much legislative discussion. Given the extensive list of exceptions and the policy expressed by the legislature, we refuse to so conclude.

Nevertheless, and despite the plain language of the Charter Schools Law, the Union defends the Board's view that the Charter Schools Law does not exempt charter schools from the Education Labor Act. The Board explained its reasoning in this regard as follows:

"Section 27A—5(g) states that '[a] charter school is exempt from all other [s]tate laws and regulations in the School Code governing public schools and local school board policies, except the following[,]' and it enumerates those [s]tate laws. The [Education Labor Act] is not one of those [s]tate laws. However, *** the [Education Labor Act] does not 'govern public schools and local school board policies.' Rather, the [Education Labor Act] governs relations between educational employers and their employees."

We reject this as too narrow an interpretation of the Charter Schools Law. The Board's decision indicates that it viewed the exemption as one encompassing only laws governing public school and local school board policies. The flaw in the Board's decision is that section 27A—5(g) exempts charter schools from two things: (1) "all other [s]tate laws" *and* (2) "regulations in the School Code governing public schools and local school board policies." 105 ILCS 5/27A—5(g) (West 2008). This is demonstrated by the fact that the exceptions to the charter school's exemptions include state laws other than those involving the School Code, such as the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1—101 through 1—210 (West 2008)), the General Not For Profit Corporation Act of 1986 (805 ILCS 105/108.75 (West 2008)), the Abused and Neglected Child Reporting Act (325 ILCS 5/1 through 11.7 (West 2008)), and the Illinois School Student Records Act (105 ILCS 10/1 through 10 (West 2008)).

### C. The Parties' Policy Arguments

We note that Northern Kane, the Union, and *amicus curiae* argue at length the general policies for and against the creation of the Charter Schools Law to demonstrate that charter schools should or should not be covered by the Education Labor Act. However, our role is not to evaluate the underlying policy arguments for and against the Charter Schools Law in an effort to decide which argument is more persuasive. That is a task our system of government vests in the legislature. Our role is to ascertain and give effect to the policy determination the legislature has made.

We note that the Union relies heavily on one legislator's comments—that is, legislative history—to convince this court that the legislature's intent was not to exempt charter schools from the Education Labor Act even though the legislature chose not to include the Education Labor Act in its list of specific exceptions to section 27A—5(g). This case demonstrates the problem with using such an interpretive tool. Here, the members of the Illinois House of Representatives and Senate voted this bill into law, and when they did, they were voting on the written bill before them, not on what one legislator might

have thought the bill meant. Indeed, because that legislator was a member of the Illinois House of Representatives, we have no reason to believe that any member of the Illinois Senate would ever have even heard of the views the legislator expressed in the House. The fact that one legislator expressed her views implies, at best, only that she held those views.

Accordingly, we conclude that the plain language of section 27A—5(g) exempts charter schools from the Education Labor Act. Therefore, we further conclude that the Board did not have jurisdiction over Northern Kane. Given that we conclude that the Education Labor Act does not apply to charter schools, we need not address whether Northern Kane is an "educational employer" under the Education Labor Act.

In closing, we note that following oral arguments in this case, the Board filed a motion for leave to cite additional authority, which this court took with the case and now grants. This additional authority, Public Act 96—0104 (Pub. Act 96—0104, eff. January 1, 2010) amended the Charter Schools Law (105 ILCS 5/27A—5 (West 2008)), effective January 1, 2010, to (1) make clear that the governing body of a charter school is an "educational employer" and (2) require charter schools to comply with the Education Labor Act. Public Act 96—0104 also emphasized that the amendments were "declaratory of existing law." Pub. Act 96—0104, eff. January 1, 2010. Because (1) the amendment does not go into effect until January 1, 2010, and (2) we agree with Northern Kane that the provision attempting to make such a change "declaratory of existing law" is unenforceable (see *People ex rel. Ryan v. Agpro, Inc.*, 214 Ill. 2d 222, 229, 824 N.E.2d 270, 275 (2005) (noting that the legislature may amend a statute prospectively when it views a judicial interpretation as at odds with its intent but may not apply statutes retroactively in such cases)), we continue to adhere to our interpretation of the Charter Schools Law.

### III. CONCLUSION

For the reasons stated, we reverse the Board's decision.

Reversed.

McCULLOUGH, P.J., and KNECHT, J., concur.