2015 IL App (2d) 150019
No. 2-15-0019
Opinion filed October 16, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| NICHOLAS KARONIS, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 11-L-872 |
| | ) | |
| VISIBLE SPECTRUM, INC., | ) | |
| TAP.TV, INC., JOHN MALEC, | ) | |
| and TERRENCE DISZ, | ) | Honorable |
| | ) | Dorothy French Mallen, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Hutchinson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Nicholas Karonis, brought this action to recover compensation allegedly owed

by defendants, Visible Spectrum Inc., TAP.tv, Inc., John Malec, and Terrence Disz.  TAP.tv

hired plaintiff to serve as its sports applications manager, and the sole compensation offered to

plaintiff was stock options in TAP.tv.  Plaintiff's 11-count, third amended complaint includes 2

claims alleging violations of section 12(G) of the Illinois Securities Law of 1953, which

prohibits a person from improperly obtaining "money or property" through the sale of securities.

815 ILCS 5/12(G) (West 2014).  The trial court dismissed the claims with prejudice on the

ground that the services plaintiff allegedly performed do not qualify as "money or property"

under section 12(G) of the Illinois Securities Law. On appeal, plaintiff renews his argument that the phrase "money or property" in section 12(G) includes services. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3     As this is an appeal from the involuntary dismissal of plaintiff's section 12(G) claims, the following facts are taken from the pleadings. On October 13, 2005, plaintiff and Malec, the chairman of the board and chief executive officer of TAP.tv, negotiated the terms of plaintiff's employment with the company, and plaintiff began work the next day. Plaintiff and Malec agreed that plaintiff would receive certain stock options in exchange for his services.

¶ 4     Two months later, on December 11, 2005, Disz, the executive vice president of TAP.tv, sent plaintiff a letter formally offering him the position of sports applications manager, setting forth his responsibilities and compensation. Plaintiff's job duties included generating ideas for sports applications, designing the application presentation and user interface, designing the overall application architecture, designing a plan for testing the applications and producing feedback for the programmers, and working with the marketing department to generate a roll-out plan. The letter also summarized the terms of compensation to which plaintiff and Malec had previously agreed:

> "Your compensation for this role will be in the form of stock options. As we discussed, the TAP.tv stock option plan has not been developed yet. The Board of Directors will create the stock option plan and I envision options being exercisable for a period of ten years, subject to vesting provisions contained in the plan subsequently adopted. Your options would be exercisable at the private placement pricing.
>
> The amount of the grant will be sufficient for you to achieve a $500,000 capital gain should the company's market value rise from the private placement $10 million

valuation to a subsequent $100 million valuation. Obviously, should we achieve a higher market cap, the capital gain would be even greater. I have to express things in this round-about way due to the lack of an option plan.

We recognize that this offer is less 'bankable' than most, due to our start-up status. About all we can really do prior to receiving funding is set the above parameters and enthusiastically express our interest in having you join us."

¶ 5 On October 15, 2006, one year after plaintiff's employment began, TAP.tv's option plan became effective and plaintiff was granted options at an exercise price of $10,000 per share pursuant to an option agreement with the company. Following three years of employment, plaintiff was terminated by TAP.tv on October 31, 2008. Plaintiff did not exercise the stock options or otherwise purchase shares in the company, and he received no payment for his services. Sometime after defendant's termination, the name of the company was changed from TAP.tv to Visible Spectrum, Inc.

¶ 6 Around when plaintiff began working for TAP.tv, the company was raising capital through a private placement offering. TAP.tv published and distributed to certain investors a private placement memorandum (PPM) dated October 26, 2005. Plaintiff's claims brought under section 12(G) of the Illinois Securities Law concern information contained in the PPM, the option plan, and plaintiff's option agreement with the company. The details of the allegations are not relevant to this appeal, because the trial court dismissed the claims on the ground that defendants had allegedly obtained plaintiff's services, not "money or property," and therefore section 12(G) of the Illinois Securities Law does not apply.

¶ 7 On September 18, 2014, the trial court dismissed the section 12(G) claims with prejudice, holding that the phrase "money or property" is unambiguous and does not include services. The

court declined to expand the scope of the statute, commenting that, if the legislature had intended section 12(G) to apply to services, it could have used that word or the phrase "anything of value," but the legislature did not.

¶ 8    Plaintiff's motion to reconsider the dismissal was heard and denied on December 9, 2014. On December 29, 2014, the trial court granted plaintiff's motion for a finding of appealability under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), and the court entered a written order stating that "there is no just cause to delay the enforcement or appeal of the December 9, 2014, order." The court denied plaintiff's motion to stay the proceedings during the pendency of this appeal. Plaintiff filed a timely notice of appeal on January 7, 2015.

¶ 9                                II. ANALYSIS

¶ 10                           A. Standard of Review

¶ 11    In their motion to dismiss, defendants argued that plaintiff lacks "standing" to allege a violation of section 12(G). Defendants purportedly brought their motion to dismiss under section 2-619(a)(1) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(1) (West 2014)), which provides for the involuntary dismissal of a claim where the trial court lacks subject matter jurisdiction. 735 ILCS 5/2-619(a)(1) (West 2014). Subject matter jurisdiction has never been at issue in this case, so section 2-619(a)(1) is not a basis for dismissing the claims. In fact, lack of standing represents "affirmative matter" that is properly raised under section 2-619(a)(9) of the Code. 735 ILCS 5/2-619(a)(9) (West 2014); *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999). However, section 2-619(a)(9) does not apply either, because a motion brought under that section admits the legal sufficiency of the complaint and asserts affirmative matter outside the pleading that avoids the legal effect of or defeats the claim. 735 ILCS 5/2-619(a)(9) (West 2014). In actuality, defendants do not raise such affirmative matter.

¶ 12    In this case, defendants have advocated dismissal on the ground that plaintiff has failed to state a claim because (1) the grant of stock options does not qualify as a sale of a security and (2) services do not qualify as "money or property" under section 12(G).  Involuntary dismissal for the failure to state a claim is prescribed by section 2-615 of the Code.  735 ILCS 5/2-615 (West 2014).

¶ 13    A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint. *Kanerva v. Weems*, 2014 IL 115811, ¶ 33.  A court deciding a section 2-615 motion must accept all well-pleaded facts in the complaint as true, and it should dismiss the complaint only where no set of facts could be proven that would entitle the plaintiff to recover.  We review *de novo* an order granting a motion to dismiss under section 2-615 of the Code.  *Kanerva*, 2014 IL 115811, ¶ 33.

¶ 14    Here, the trial court did not specify whether the dismissal was based on section 2-615 or section 2-619, but the court's comments imply a determination that plaintiff has failed to state a claim under section 12(G).  In any event, we may affirm the dismissal on any basis appearing in the record.  See *In re Veronica C*., 239 Ill. 2d 134, 151 (2010).

¶ 15                                    B. Statutory Interpretation

¶ 16                                    1. Section 12(G)

¶ 17    The parties dispute the interpretation of section 12(G) of the Illinois Securities Law.  The primary objective of statutory interpretation is to give effect to the intent of the legislature, and the most reliable indicator of legislative intent is the language of the statute given its plain, ordinary, and popularly understood meaning.  *Gardner v. Mullins*, 234 Ill. 2d 503, 511 (2009).  The statute " 'should be read as a whole with all relevant parts considered.' "  *Gardner*, 234 Ill. 2d at 511 (quoting *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990)).  If the statutory language is

clear, a reviewing court need not resort to extrinsic aids of construction, such as legislative history. *Northern Kane Educational Corp. v. Cambridge Lakes Education Ass'n IEA-NEA*, 394 Ill. App. 3d 755, 758 (2009). In such a situation, a court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are inconsistent with the express legislative intent. *Landheer v. Landheer*, 383 Ill. App. 3d 317, 321 (2008). Nonetheless, when reviewing a statute, we also consider the subject it addresses and the legislature's apparent objective in enacting it, while presuming that the legislature did not intend to create absurd, inconvenient, or unjust results. *Fisher v. Waldrop*, 221 Ill. 2d 102, 112 (2006). The construction of a statute presents a question of law, which we review *de novo*. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 510-11 (2007).

¶ 18    Section 12(G) provides that it is a violation of the Illinois Securities Law for a person "[t]o obtain *money or property* through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." (Emphasis added.) 815 ILCS 5/12(G) (West 2014). We need not address the veracity of defendants' statements or omissions, because section 12(G) applies only when a defendant "obtain[s] money or property through the sale of securities." 815 ILCS 5/12(G) (West 2014). For the following reasons, we agree with the trial court that plaintiff has failed to state a claim under section 12(G), because he alleges merely that defendants improperly obtained his employment services, not his money or property.

¶ 19    Plaintiff contends that the services defendants allegedly obtained qualify as "money or property." The Illinois Securities Law does not define "money" or "property," but the plain, ordinary, and popularly understood meanings of the terms show that section 12(G) is

unambiguous and does not apply to services.  To read "services" into the definition of "money" or "property" would broaden the statute in a way the legislature did not intend.

¶ 20    The potentially relevant definitions of "money" are: (1) "something generally accepted as a medium of exchange, a measure of value, or a means of payment" and (2) "assets or compensation in the form of or readily convertible to cash."  Webster's Third New International Dictionary 1458 (1993).  Plaintiff's services do not meet these definitions, as his performance as a sports applications manager at a technology startup is not generally accepted as a medium of exchange, a measure of value, or a means of payment.  Plaintiff's services as an employee certainly had some value, but they are not assets or compensation in the form of or readily convertible to cash.  Providing services is not generally used as a form of payment.

¶ 21    The potentially relevant definitions of "property" are: (1) "something that is or may be owned or possessed" and (2) "something to which a person has a legal title" such as "an estate in tangible assets (as lands, goods, money) or intangible rights (as copyrights, patents) in which or to which a person has a right protected by law."  Webster's Third New International Dictionary 1818 (1993).  Plaintiff's services do not meet these definitions either, as his performance was not something that could be owned or possessed or something to which a person can hold legal title.

¶ 22    Our interpretation of the plain, ordinary, and popularly understood meanings of the terms "money" and "property" is consistent with the rest of the Illinois Securities Law.  Section 12 sets forth 12 practices that qualify as violations.  815 ILCS 5/12 (West 2014).  In turn, section 13(A) provides, generally, that a purchaser proving a violation resulting from the sale of a security may void the sale and that the sellers shall be jointly and severally liable to the purchaser for "the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate

of 10% per annum) less any income or other amounts received by the purchaser on the securities, upon offer to tender to the seller or tender into court of the securities sold or, where the securities were not received, of any contract made in respect of the sale." 815 ILCS 5/13(A)(1) (West 2014). Any cause of action plaintiff could bring under section 13(A) for a violation of section 12(G) would be for a refund of the amount paid to defendants for the options, plus interest and attorney fees. However, plaintiff does not allege that he made any payments to defendants. Rather, he provided his services in the role of sports applications manager in exchange for the stock options. Plaintiff has no recourse under section 13(A), because the exchange of his services for stock options does not qualify as a "sale" under the statute.

¶ 23                                    2. Federal Securities Act

¶ 24     Section 12(G) of the Illinois Securities Law is patterned after section 17(a)(2) of the Securities Act of 1933 (Federal Securities Act), which provides that it shall be unlawful "to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading," and Illinois courts look to federal precedent when interpreting this provision. 15 U.S.C. § 77q(a)(2) (2012); *Lucas v. Downtown Greenville Investors Ltd. Partnership*, 284 Ill. App. 3d 37, 45 (1996). Citing several federal cases that have interpreted section 17(a)(2) of the Federal Securities Act, plaintiff argues that, like the federal statute on which it is based, (1) the Illinois Securities Law must be interpreted liberally to effect its purpose and (2) the meanings of terms in the Illinois Securities Law are flexible, not static. Plaintiff argues that the terms "money" and "property" in section 12(G) are ambiguous and that we should rely on these federal cases to depart from their plain, ordinary, and popularly understood meanings. However, plaintiff has cited no authority for the proposition that the terms

"money" and "property" in section 17(a)(2) include services. At best, the cases on which plaintiff relies have interpreted other terms in section 17(a)(2) or federal statutes unrelated to this matter. Regardless, the statutory language is clear, and we need not resort to extrinsic aids of construction. See *Northern Kane Educational Corp.*, 394 Ill. App. 3d at 758. We decline to read into section 12(G) the term "services," which is inconsistent with the express legislative intent. See *Landheer*, 383 Ill. App. 3d at 321.

¶ 25    Plaintiff alternatively argues that defendants *did* obtain money from plaintiff—albeit indirectly. Plaintiff contends that "by receiving services from plaintiff in exchange for options in lieu of cash, [defendants] indirectly received cash, in that they saved the cash they would have had to pay plaintiff for his services." While that might be true, plaintiff disregards the plain language of section 12(G), which requires a showing that defendants "obtain[ed] money or property through the sale of securities." 815 ILCS 5/12(G) (West 2014). By contrast, plaintiff alleges that defendants obtained his services through the grant of the options. As the trial court observed, the legislature did not define section 12(G) in terms of obtaining something of value that results in a cash savings.

¶ 26    We note that plaintiff does not request a remand for the trial court to afford him the opportunity to further amend his section 12(G) claims. We hold that the trial court did not err in dismissing the claims with prejudice.

¶ 27                                III. CONCLUSION

¶ 28    For the reasons stated, we affirm the involuntary dismissal with prejudice of plaintiff's two claims under section 12(G) of the Illinois Securities Law.

¶ 29    Affirmed.