2017 IL App (2d) 170075
Nos. 2-17-0075, 2-17-0076, 2-17-0077 cons.
Opinion filed July 13, 2017

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* BRANDON K., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | No. 14-JA-93 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee, v. S. K., | ) | William Parkhurst, |
| Respondent-Appellant). | ) | Judge, Presiding. |

| | | |
|---|---|---|
| *In re* NATHAN K., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | No. 14-JA-94 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee, v. S. K., | ) | William Parkhurst, |
| Respondent-Appellant). | ) | Judge, Presiding. |

| | | |
|---|---|---|
| *In re* JUSTIN K., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| | ) | |
| | ) | No. 14-JA-95 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee, v. S. K., | ) | William Parkhurst, |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices McLaren and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1     Respondent, S. K., appeals from the Kane County circuit court's order terminating his parental rights to his three minor children, Brandon K., Nathan K., and Justin K.  In the underlying criminal action, a jury found respondent guilty of the first-degree murder of the minors' mother (see 720 ILCS 5/9-1(a)(1) (West 2014)), based on evidence of strangulation. Respondent's direct appeal from the conviction is pending in this court.

¶ 2     The trial court found that the State had shown by clear and convincing evidence that respondent was unfit, based on (1) depravity (see 750 ILCS 50/1(D)(i) (West 2014)); (2) failure to make reasonable progress toward the return of the minors to him during the nine-month period from June 26, 2015, to March 26, 2016 (see 750 ILCS 50/1(D)(m)(ii) (West 2014)); and (3) failure to make reasonable efforts to correct the conditions that were the basis for the removal of the minors from him during the nine-month period from June 26, 2015, to March 26, 2016 (see 750 ILCS 50/1(D)(m)(i) (West 2014)).  However, the trial court also found that the State did not prove respondent unfit for failing to make reasonable efforts from September 25, 2014, to June 25, 2015 (see 750 ILCS 50/1(D)(m)(i) (West 2014)).  The trial court then determined that termination of respondent's parental rights was in the minors' best interests.  Respondent does not contest the best-interests determination but argues that the evidence does not support the court's finding of unfitness.  We affirm.

¶ 3                                      I. BACKGROUND

¶ 4                            A. Adjudication and Disposition

¶ 5     Brandon was born on September 1, 2004, Nathan was born on April 28, 2007, and Justin was born on December 8, 2008.  On July 6, 2014, the Department of Children and Family Services (DCFS) received a hotline call stating that the minors' mother was found deceased

under suspicious circumstances. At the time of their mother's death, the boys were nine, seven, and five years old, respectively.

¶ 6    At a temporary-custody hearing on July 21, 2014, respondent stipulated that, on July 11, 2014, he was charged with two counts of first-degree murder for the mother's death and was incarcerated in the Kane County jail on a $1.5 million bond. The court found that probable cause and urgent and immediate necessity existed for the removal of the minors. DCFS was granted custody, and the minors were placed with their maternal grandfather.

¶ 7    On September 24, 2014, the trial court adjudicated the minors dependent. See 705 ILCS 405/2-4(1)(a) (West 2014). On October 27, 2014, respondent was found unfit, unable, and unwilling to care for and protect the minors, and the minors were made wards of the court. The initial goal was for the minors to return home within 12 months. The minors remained in the care of their maternal grandfather.

¶ 8                              B. Permanency Reviews

¶ 9                              1. November 2014 through January 2015

¶ 10    On January 20, 2015, the trial court conducted a permanency review. The court heard evidence that respondent's criminal trial was scheduled for that spring. Christina Divito, a caseworker from the Youth Service Bureau (YSB), reported that respondent was cooperating with DCFS to the extent that he could while in custody. Divito scheduled an appointment that week for respondent to sign various consent forms and complete an integrated assessment, which was required before services could be offered. The minors remained with their maternal grandfather.

¶ 11                              2. February 2015 through June 2015

¶ 12    At a permanency review on July 7, 2015, the court continued the matter to January 20, 2016, because of intervening events in respondent's criminal case.  On March 16, 2015, respondent had been found guilty of first-degree murder, and on July 31, 2015, respondent had been sentenced to 30 years' imprisonment.  On November 6, 2015, respondent filed a direct appeal from the murder conviction, which is pending.

¶ 13                              3. July 2015 through March 2016

¶ 14    On January 20, 2016, Kelly Beinborn, a caseworker assigned to the minors in October 2015, reported that respondent had completed the integrated assessment in June 2015.  Domestic violence and mental health services were recommended, but respondent had not attempted to follow through with those recommendations.  Those services had been unavailable in the Kane County jail, but in August 2015, soon after his conviction, respondent was transferred to Stateville Correctional Center, where the services were available.  In January 2016, respondent was transferred to Menard Correctional Center.  Beinborn reported that she would follow up as to the availability of services there.

¶ 15    Respondent had submitted letters to the minors, but they were not delivered.  The letters were deemed to be not therapeutically recommended, because respondent had made certain promises in the letters that he could not keep, due to his incarceration.  The maternal grandfather was willing to provide permanency through adoption.

¶ 16    On February 5, 2016, respondent filed a motion to stay the proceedings during the pendency of his criminal appeal.  On March 30, 2016, the motion was heard and denied.

¶ 17                              C. Termination of Parental Rights

¶ 18    On July 16, 2016, the State filed three amended petitions for termination of respondent's parental rights and the power to consent to adoption.  Each petition was directed at one of the

minors and contained identical allegations. Following several hearings at which the State presented evidence regarding respondent's first-degree-murder conviction and whether he had made reasonable efforts and progress, the trial court found respondent unfit, based on (1) depravity (750 ILCS 50/1(D)(i) (West 2014)); (2) failure to make reasonable progress toward the return of the minors to him during the nine-month period from June 26, 2015, to March 26, 2016 (750 ILCS 50/1(D)(m)(ii) (West 2014)); and (3) failure to make reasonable efforts to correct the conditions that were the basis for the removal of the minors from him during the nine-month period from June 26, 2015, to March 26, 2016 (750 ILCS 50/1(D)(m)(i) (West 2014)).

¶ 19    The cause proceeded to a best-interests hearing. The court found that it was in the minors' best interests to terminate respondent's parental rights and entered a judgment doing so. This timely appeal followed.

¶ 20                                   II. ANALYSIS

¶ 21    Respondent appeals from the termination of his parental rights. Initially, we admonish respondent's counsel for using the minors' full names in briefing materials, in violation of Illinois Supreme Court Rule 660(c) (eff. Oct. 1, 2001), which provides as follows:

> "In all appeals filed from proceedings under the Juvenile Court Act, the minor(s) shall be identified by first name and last initial or by initials only. The preferred method is first name and last initial. The alternative method of initials only is to be used when, due to an unusual first name or spelling, the preferred method would create a substantial risk of revealing a minor's identity. The name(s) of the involved minor(s) shall not appear on any documents filed with the Appellate Court or any subsequent court."

¶ 22    Turning to the merits of the appeal, we emphasize that a parent's right to raise his or her biological child is a fundamental liberty interest and that the involuntary termination of that right

is a drastic measure. *In re Haley D*., 2011 IL 110886, ¶ 90. Accordingly, the Juvenile Court Act of 1987 provides a two-stage process for the involuntary termination of parental rights. 705 ILCS 405/2-29(2) (West 2014). Initially, the petitioner must prove by clear and convincing evidence that the parent is unfit. 705 ILCS 405/2-29(2), (4) (West 2014); 750 ILCS 50/1(D) (West 2014); *In re Adoption of Syck*, 138 Ill. 2d 255, 277 (1990); *In re Antwan L*., 368 Ill. App. 3d 1119, 1123 (2006). We will reverse the trial court's finding of unfitness only if it is against the manifest weight of the evidence. A determination of unfitness is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the determination is unreasonable, arbitrary, or not based on the evidence presented. *In re Addison R*., 2013 IL App (2d) 121318, ¶ 22.

¶ 23    If the court finds the parent unfit, the petitioner must then show that termination of parental rights would serve the child's best interests. 705 ILCS 405/2-29(2) (West 2014); *Syck*, 138 Ill. 2d at 277; *Antwan L*., 368 Ill. App. 3d at 1123. As our supreme court has noted, at the best-interests phase, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T*., 212 Ill. 2d 347, 364 (2004). Respondent does not challenge the trial court's best-interests determination on appeal, so our analysis is limited to the unfitness finding.

¶ 24    Section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2014)) sets forth numerous grounds on which a parent may be found unfit, but any one of the grounds, if properly proven, is sufficient to enter a finding of unfitness. *In re Joshua S*., 2012 IL App (2d) 120197, ¶ 44. The trial court is generally in the best position to assess the credibility of the witnesses and, therefore, we will not reassess credibility on appeal. As cases concerning parental unfitness are *sui*

*generis*, unique unto themselves, courts generally do not make factual comparisons to other cases. *Joshua S*., 2012 IL App (2d) 120197, ¶ 44.

¶ 25 The Adoption Act specifies the following among the grounds for a finding of parental unfitness:

> "(i) Depravity. Conviction of any one of the following crimes shall create a presumption that a parent is depraved which can be overcome only by clear and convincing evidence: (1) first degree murder in violation of paragraph 1 or 2 of subsection (a) of Section 9-1 of the Criminal Code of 1961 or the Criminal Code of 2012 [(Criminal Code) (720 ILCS 5/1-1 *et seq.* (West 2014))] or conviction of second degree murder in violation of subsection (a) of Section 9-2 of the Criminal Code *** of a parent of the child to be adopted ***.
>
> ***
>
> There is a rebuttable presumption that a parent is depraved if that parent has been criminally convicted of either first or second degree murder of any person as defined in the Criminal Code *** within 10 years of the filing date of the petition or motion to terminate parental rights." 750 ILCS 50/1(D)(i) (West 2014).

¶ 26 Respondent challenges the finding of depravity on two grounds. First, he asserts that the statutory presumption in section 1(D)(i) of the Adoption Act should not apply unless and until all avenues of appeal have been exhausted. Second, he asserts that the State must show that the parent committed more than one offense or that the offense committed was based upon "heinous circumstances or brutal, wanton cruelty." Respondent points out that he was convicted of only one offense and downplays the heinousness of a murder involving "death by asphyxiation." We agree with the State that respondent's arguments are flawed in that they disregard the

unambiguous language of section 1(D)(i) while relying entirely on certain Illinois cases that predate the statutory presumption and on case law from other states.

¶ 27    Although the ultimate finding of unfitness is subject to review under the manifest-weight-of-the-evidence standard, the parties agree that respondent's arguments raise primarily a question of statutory interpretation, which we review *de novo*. See *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006). The primary objective of statutory interpretation is to give effect to the intent of the legislature, and the most reliable indicator of legislative intent is the language of the statute given its plain, ordinary, and popularly understood meaning. *Gardner v. Mullins*, 234 Ill. 2d 503, 511 (2009). The statute " 'should be read as a whole with all relevant parts considered.' " *Gardner*, 234 Ill. 2d at 511 (quoting *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990)). If the statutory language is clear, a reviewing court need not resort to extrinsic aids of construction, such as legislative history. *Northern Kane Educational Corp. v. Cambridge Lakes Education Ass'n*, 394 Ill. App. 3d 755, 758 (2009). In such a situation, a court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are inconsistent with the express legislative intent. *Landheer v. Landheer*, 383 Ill. App. 3d 317, 321 (2008). Nonetheless, when reviewing a statute, we also consider the subject it addresses and the legislature's apparent objective in enacting it, while presuming that the legislature did not intend to create absurd, inconvenient, or unjust results. *Fisher v. Waldrop*, 221 Ill. 2d 102, 112 (2006).

¶ 28    Section 1(D)(i) of the Adoption Act provides that a "conviction" of first-degree murder under section 9-1(a)(1) of the Criminal Code creates a presumption that a parent is depraved and that the presumption can be overcome only by clear and convincing evidence. 750 ILCS 50/1(D)(i) (West 2014). Section 2-5 of the Criminal Code provides that " '[c]onviction' means a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of

guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury." 720 ILCS 5/2-5 (West 2014). Respondent does not contest the authority of the trial court in the criminal case to enter judgment on the jury's verdict that he committed the first-degree murder of the minors' mother under section 9-1(a)(1) of the Criminal Code. The plain and ordinary meanings of section 2-5 of the Criminal Code and section 1(D)(i) of the Adoption Act demonstrate that the judgment in the criminal case qualifies as a "conviction" to create a presumption of depravity under section 1(D)(i).

¶ 29    Respondent objects to the trial court's "literal reading" of section 1(D)(i), but in fact he attempts to read into the statute a condition that the legislature never intended. See *Board of Education of Woodland Community Consolidated School District 50 v. Illinois State Charter School Comm'n*, 2016 IL App (1st) 151372, ¶ 38 ("a court may not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that the legislature did not express"). He asserts that his murder conviction would be a ground for the statutory presumption only upon "the exhaustion of all state court avenues of appeal consistent with decades of case law."

¶ 30    Our supreme court has rejected the related notion that an unfitness determination may be postponed while the underlying criminal conduct is under appellate review. The court held, "the Adoption Act does not call for courts to reserve ruling on findings of unfitness which are related to criminal matters until the appellate process in the underlying cause has been exhausted." *Donald A.G.*, 221 Ill. 2d at 254. "Regardless of how painful it may be to a parent, regardless of whether the parent is likely to prevail on appeal, if he is convicted of murdering the children's other parent, then he is unfit and his parental rights are to be terminated immediately, unless he

can overcome the presumption of unfitness by clear and convincing evidence." *In re C.M.J.*, 278 Ill. App. 3d 885, 892 (1996).

¶ 31    Disregarding the longstanding statutory presumption of depravity, respondent argues that the State was required to show that he has "an inherent deficiency of moral sense and rectitude" with evidence of "repetitious acts of sufficient duration to establish a deficiency in a moral sense and either an inability or an unwillingness to conform to accepted moral standards." He concludes that the State failed to meet this standard, because "one criminal conviction is not sufficient to establish unfitness based on depravity" and the State did not show that his murder conviction was accompanied by a finding of brutal and heinous conduct.

¶ 32    In support, respondent cites *Stalder v. Stone*, 412 Ill. 488 (1952), *Young v. Prather*, 120 Ill. App. 2d 395 (1970), *In re Sanders*, 77 Ill. App. 3d 78 (1979), *In re S.H.*, 284 Ill. App. 3d 392 (1996), and other cases, but neither those Illinois cases nor those he cites from other jurisdictions addressed the current version of section 1(D)(i) of the Adoption Act, which applies to respondent. Respondent takes superficially favorable language from those cases out of context, implies that the conduct in those cases makes his murder conviction appear less abhorrent by comparison, and incorrectly concludes that the finding of depravity must be reversed. See *Joshua S.*, 2012 IL App (2d) 120197, ¶ 44 (courts generally do not make factual comparisons to other cases concerning parental unfitness).

¶ 33    Respondent cites no authority to refute the trial court's conclusion that the judgment in the criminal case qualifies as a "conviction" to create a presumption of depravity under section 1(D)(i) of the Adoption Act. Adopting respondent's position would contravene the supreme court's definitive pronouncement that a court should not reserve ruling on a finding of unfitness

that is related to a criminal matter until the appellate process in the underlying cause has been exhausted. *Donald A.G.*, 221 Ill. 2d at 254.

¶ 34    Respondent disagrees with the presumption itself. He does not argue that he rebutted the presumption by clear and convincing evidence presented at the unfitness hearing. We conclude that the trial court's unfitness finding based on depravity is not against the manifest weight of the evidence.

¶ 35    Our determination that the finding of unfitness based on depravity is not against the manifest weight of the evidence obviates the need to consider the other bases for finding unfitness. See *Joshua S.*, 2012 IL App (2d) 120197, ¶ 44 (any one ground, if properly proven, is sufficient to enter a finding of unfitness).

¶ 36                                  III. CONCLUSION

¶ 37    We conclude that the finding of unfitness based on depravity is not against the manifest weight of the evidence. Therefore, we affirm the judgment of the circuit court terminating respondent's parental rights.

¶ 38    Affirmed.